[No. H002134. Sixth Dist. Sept. 29, 1988.]

MORGAN HILL UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
FRED AMOROSO et al., Defendants and Respondents.

COUNSEL

Littler, Mendelson, Fastiff & Tichy and Robert T. Owens for Plaintiffs and Appellants.

Kelly J. Walker and Pam S. Bietz for Defendants and Respondents.

OPINION

AGLIANO, P. J.—

1. *Introduction*

Plaintiffs Morgan Hill Unified School District and Morgan Hill Unified School District School Building Corporation brought this action in October

1985 to validate their proposed issuance and sale of $3.75 million worth of bonds for additions and improvements to a high school. The high school was constructed pursuant to approval by local voters in 1972. Defendant Fred Amoroso responded to this action as a taxpayer. Plaintiffs appeal from the court's determination after trial that the voters in November 1972 did not authorize the construction now proposed by way of lease amendment and supplemental indenture.

One week before trial, on February 19, 1986, this court issued a published opinion entitled *Pajaro Valley Unified School Dist.* v. *Garcia* (Cal.App.) H000460, which the trial court considered determinative. On May 8, 1986, the California Supreme Court granted a petition for review of our decision. On December 4, 1986, we granted a motion to stay briefing in this case pending the California Supreme Court's issuance of a remittitur in that case. On April 16, 1987, the Supreme Court dismissed review pursuant to California Rules of Court, rule 29.4 (c), and remanded that case to this court.

California Rules of Court, rule 976 (d), provides: "Unless otherwise ordered by the Supreme Court, no opinion superseded by a grant of review, rehearing, or other action shall be published. After granting review, after decision, or after dismissal of review and remand as improvidently granted, the Supreme Court may order the opinion of the Court of Appeal published in whole or in part." Since the Supreme Court's remand did not order our opinion published, it is no longer published, contrary to the assumption in defendant's brief.

We find no applicable exception in California Rules of Court, rule 977, warranting our citation or reference to our prior opinion, other than its mention above in explanation of the trial court's decision and the procedural history of this case. We will affirm because our understanding of the statutes has not changed.

2. *Facts*

On November 7, 1972, voters affirmatively answered the following ballot question: "Shall the Governing Board of the Morgan Hill Unified School District prepare plans and specifications and lease buildings to be constructed for use by the School District consisting of a fully furnished, equipped and landscaped new high school to be furnished, installed and constructed on that certain 48 acre school site belonging to the District and located on East Main Avenue in Morgan Hill, California; and, for such purposes, shall the maximum tax rate of the District be increased from $4.02 to $4.60, such rate to be in effect in the Morgan Hill Unified School District for the school

years 1973-74 to 1999-2000, be authorized and the amount of such increase used solely and exclusively for such purposes?"

Pursuant to this vote, on September 1, 1973, plaintiff Morgan Hill Unified School District leased property to plaintiff Morgan Hill Unified School District School Building Corporation and the latter entered into an indenture with Bank of America to issue $6.72 million worth of bonds to finance construction of the school. Construction was completed.

On August 26, 1985, the Board of Directors of the Morgan Hill Unified School District adopted a resolution to enter into an amended facility lease and an indenture "supplemental" to the earlier one to issue $3.75 million worth of bonds to finance additions and improvements to the high school. (The proposed amended lease is not part of the record.) The additional bonds are to be paid for by levying the surcharge authorized by the 1972 ballot measure. On September 3, 1985, the Board of Directors of the Morgan Hill Unified School District School Building Corporation adopted a similar resolution. This action was brought to validate these proposals.

3. *Discussion*

The Education Code creates the following method for financing school construction. (Unspecified section references are to the Education Code.) School district leasing of realty and buildings is authorized by sections 39300 through 39325. Voter approval at an election is generally required for a school district to enter a lease. (§§ 39307, 39310.) Such an election will either authorize (§ 39308) or ratify (§ 39311) the plans made by the district for a site and building lease (§§ 39302, 39314).

After the voters approve a project, "if the governing board of the district fails to enter into *a* lease pursuant to this article within three years after an election, . . . the authorization for an increase in the maximum tax rate shall become void." (§ 39313, subd. (a); italics added.) This section derives from former section 15711, enacted in 1959 and amended in 1970. (Stats. 1959, ch. 2, p. 1088; Stats. 1970, ch. 1353, § 2, p. 2518.) It has always referred to "a lease."

No one questions that section 39313 applies retroactively to the 1972 election which predated its enactment. The enactment stated: "This act shall operate retroactively to the extent that it shall apply even if the election was held, . . . before the effective date of this act." (Stats. 1977, ch. 1005, § 2, p. 3027.)

Former section 15708 (now § 39308) is the key statute in understanding this legislative scheme. At the time of the November 1972 election, it

provided: "Before entering into *a* lease or agreement pursuant to this article (commencing at Section 15701), the governing board of the district shall call, hold, and conduct an election in the manner provided in Section 20803, except that *the* ballot used in the election shall contain substantially the words: 'shall the governing board of the —— District purchase *a* site, prepare plans and specifications, [the reference to the site and plans and specifications shall not be included if, prior to calling the election, the governing board of the district has acquired *a* site or proposes to lease *a* site and has prepared plans and specifications] and lease [*a* site and] *a* building to be constructed for use by the school district [designating the location of *the* site on which *the* building will be constructed and generally describing *the* building], and, for such purposes, shall the maximum tax rate of the district be increased from —— to ——, such rate to be in effect in the —— District for the year 19__to 19__, be authorized and the amount of such increase used solely and exclusively for such purposes?'" (Stats. 1959, ch. 2, p. 1087, italics added.)

Before former section 15708 was renumbered to become section 39308, it was amended in 1974 to allow a school district to obtain voter approval of a multi-site, multi-building lease. (Stats. 1974, ch. 547, §§ 11, 30, pp. 1366, 1372; effective as an urgency statute on Aug. 27, 1974.) The important introductory provision remains, "Before entering into *a* lease or agreement . . . ." (Italics added.)

■ Plaintiffs' position is that the voters in November 1972 authorized a certain tax rate increase and any further high school construction that could be financed by that increase at any time between the school years 1973-1974 and 1999-2000. In other words, the voters essentially gave plaintiffs a blank check with a specified maximum amount to be spent at a specified location. Defendant's position is that the voters authorized one lease for the construction of a "furnished, equipped and landscaped new high school" and did not authorize later lease amendments and construction which might be financed by the approved tax increase.

It appears from the italicized terms and the lack of plural terms in the statutes quoted above that the Legislature contemplated submission to the voters of a separate ballot proposition for each proposed building to be constructed and leased. Such a lease must be entered into within three years from the election.

Assuming for the sake of argument that former section 15708 allowed plaintiffs to obtain authorization in one 1972 ballot proposition for more than one building at the high school, it did not allow plaintiffs the option of obtaining approval of more than one lease in one proposition. The plain

meaning of the introductory provision is that only one lease may be submitted to the voters in one proposition.

We are aware that the Education Code sections "are to be liberally construed, with a view to effect its objects and to promote justice." (§ 2.) Our interpretation does so by promoting voter control over school construction and leasing. We doubt the Legislature intended school districts to be able to circumvent a submission to the voters by the device of lease amendments.

Plaintiffs rely on provisions in the September 1973 indenture that contemplate a supplemental indenture. These provisions were not before the voters in November 1972 and are irrelevant to our interpretation of the governing statutes. It is also irrelevant that California Constitution article XIIIA, section 4, may not bar this proposed use of a property tax increase. (Cf. *Las Virgenes Mun. Wat. Dist.* v. *Dorgelo* (1984) 154 Cal.App.3d 481, 484-486 [201 Cal.Rptr. 266].)

We conclude the trial court did not err in denying validation to plaintiffs. Our construction of the statutes is that plaintiffs lack authority to amend the lease and finance high school construction in the manner they propose. (Cf. *O'Farrell* v. *County of Sonoma* (1922) 189 Cal. 343, 347-349 [208 P. 117].)

4. *Disposition*

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.