[No. H006970. Sixth Dist. Mar. 22, 1991.]

JOANNE FORTNER, Plaintiff and Appellant, v.
SAFEWAY STORES, INC., et al., Defendants and Respondents.

**COUNSEL**

Gary B. Wesley for Plaintiff and Appellant.

Littler, Mendelson, Fastiff & Tichy, David J. Murphy and Stephen M. Yang for Defendants and Respondents.

## OPINION

**COTTLE, J.**—In this action alleging discrimination based on a physical handicap, the trial court granted summary judgment to defendants on the ground that plaintiff's exclusive remedy rested in Labor Code section 132a.[1] Plaintiff appeals, contending that defendants failed to meet their burden of proving the elements required to assert this section as an affirmative defense to the action. We affirm this judgment.

### 1. *Scope of Review*

■ On appeal from a grant of a summary judgment motion, the reviewing court independently reviews the supporting and opposing papers, applying the same three-step analysis required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203]; *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] . . . [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc., supra*, 179 Cal.App.3d at pp. 1064-1065.)

■ Summary judgment is proper only if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To determine whether there is a material factual issue it is proper to compare the separate statements of facts and supporting evidence in the motion, the opposition, and any reply. (*ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 311 [262 Cal.Rptr. 773].)

### 2. *The Pleadings*

According to her first amended complaint, plaintiff was employed as a grocery clerk by defendant Safeway Stores. On November 7, 1986, her manager, defendant Terry Smithson, suspended plaintiff for wearing to work open-toed sandals called Birkenstocks, which was against the safety rules of the store. Plaintiff claimed that the suspension constituted discrimination on the basis of a physical handicap, since Birkenstocks were the only

---

[1] Unless otherwise indicated all further statutory references are to the Labor Code.

shoes that alleviated her "painful feet" condition and allowed her to work. On April 28, 1987, after she returned to work, plaintiff was again suspended for wearing Birkenstock sandals on the job. Plaintiff alleged that this suspension constituted discrimination on the basis of her physical handicap as well as retaliation for having previously filed a charge of discrimination with the California Department of Fair Housing and Employment. A supplemental complaint filed in November 1988 added a second cause of action alleging discrimination based on the April 1987 suspension.

Safeway and Smithson filed a general denial to the first amended and supplemental complaints, and set forth several affirmative defenses, including the allegation that the court's jurisdiction was preempted by the California Workers' Compensation Act, section 3200 et seq. Defendants thereafter filed a motion for summary judgment, asserting that plaintiff's exclusive remedy was contained in section 132a. The motion and supporting evidence revealed the following additional facts:

Plaintiff's "painful feet" condition developed in 1976, when the grocery store at which she worked was owned by a different company. Plaintiff continued to experience this condition after 1983, when Safeway became owner of the store. On December 23, 1986, plaintiff applied for workers' compensation benefits because of her painful feet, claiming her condition was caused by "continuous and repetitive trauma" arising out of and in the course of employment. Plaintiff also filed a disability insurance claim in March 1987, stating that the disability was caused by her work. On the second page of the disability claim form, her podiatrist, Dr. David Francis, explained that she suffered from a "work related injury" which was "painful but not incapacitating." Plaintiff received $3,808 in state disability payments as a result of this claim. In April 1987, plaintiff filed through the union another disability claim, which again contained the statement from her and her physician that the injury was job-related.

After she was suspended the first time in November 1986, plaintiff filed a grievance under a collective bargaining agreement governing her employment. As a result, her suspension was converted to a six-month sick leave. When she returned to work on April 28, 1987, wearing open-toed Birkenstock sandals, Smithson suspended her indefinitely for again violating Safeway's store rules. The parties engaged in arbitration proceedings pursuant to the collective bargaining agreement, as a result of which the arbitrator found that the April 1987 suspension was not for just cause, but that Safeway was justified in not returning plaintiff to a position as grocery checker. The arbitrator converted the suspension to an unpaid industrial leave of absence.

In their statement of undisputed facts defendants further asserted,

"During treatment for her painful feet condition, the Plaintiff has described her condition as arising from her work as a grocery checker, and her treating physicians during her period of employment with Safeway have considered her condition as work-related."

Plaintiff challenged the statement that she had described her condition as arising from her work, "insofar as this implies that plaintiff is competent to offer a medical opinion on the subject and insofar as it implies that plaintiff has stated that she knows the causes of her painful feet." Plaintiff offered evidence from her deposition that she was uncertain as to the cause of her injury. She further challenged the statement that her treating physicians had considered her condition work related, pointing out that two physicians had not offered any opinion on this question. The trial court "reluctantly" granted the motion and entered judgment for defendants.

3. *Applicability of Section 132a*

Prior to 1990, section 132a provided, in relevant part: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

■ This provision, along with certain sections of the Workers' Compensation Act, has been held "to provide the exclusive remedy for a worker discharged in retaliation for exercising workers' compensation rights." (*Portillo* v. *G. T. Price Products, Inc.* (1982) 131 Cal.App.3d 285, 287 [182 Cal.Rptr. 291].) The employee in *Portillo* alleged she had been discharged for filing a workers' compensation claim.

In *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rptr. 250, 586 P.2d 564], the California Supreme Court upheld the authority of the Workers' Compensation Appeals Board to interpret section 132a broadly to prohibit discrimination in *any* manner against an industrially injured employee. The court agreed with the board that

"[t]he policy of protection which the workers' compensation laws declare can only be effectuated if an employer may not discharge an employee because of the employee's absence from his job as the consequence of an injury sustained in the course and scope of employment." (*Id.* at p. 669.)

Relying on *Portillo* and *Judson Steel*, the court in *Pickrel v. General Telephone Co.* (1988) 205 Cal.App.3d 1058 [252 Cal.Rptr. 878], applied the exclusivity rule to a civil action alleging wrongful termination due to a physical handicap. Since the handicap (a back condition) was the result of a workplace injury (continuous trauma followed by a back sprain), workers' compensation was the exclusive remedy for this claim.

On appeal, plaintiff renews her contention that section 132a does not apply to the facts of this case. According to plaintiff, in order to assert successfully an affirmative defense based on this statute, a defendant must prove "(1) the employee's condition arose out of and in the course of employment, (2) by the same employer, and (3) the employer knew that the condition was so caused." None of these conditions, she argues, was met in this case.

### 4. Was Plaintiff's Condition a Work-related Injury?

■ In order for the Workers' Compensation Act to apply, the alleged injury must arise out of and in the course of the employment. (Lab. Code, § 3600.) This requirement is twofold. To arise out of the employment, the employment must be linked to the injury as either a sole or a contributing cause. (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 734 [190 Cal.Rptr. 904, 661 P.2d 1058].) An employee is "in the course of" employment when he or she performs an act expressly or impliedly permitted by the employment contract, or a duty imposed upon him or her by the employer and which is necessary to perform in order to satisfy the terms of the employment contract. (*Id.* at p. 733.)

Plaintiff first contends that defendants failed to prove that her foot condition was a work-related injury. On the assumption that the employment must generate the injury, plaintiff argues the evidence presented at most establishes that "forcing her to wear closed toe shoes aggravates her condition causing pain," but does not establish that it was "the result of an injury which occurred on a job somewhere."

■ Plaintiff's contention is without merit. In order to qualify for workers' compensation benefits, it is not necessary that a cumulative injury originate on the jobsite of the discriminating employer. On the contrary, an employee is entitled to such benefits for a preexisting injury or disability,

whether industrially caused or not, when a later injury on the job aggravates that condition. (*Maher* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d 729, 734.) Plaintiff herself has conceded throughout that her work at Safeway aggravated her foot condition, particularly when she was forced to wear closed-toe shoes. Thus, even if we were to ignore the abundant evidence in the record that the injury was at least partially caused by her employment as a grocery clerk,[2] she would not be precluded from adjudication under the Workers' Compensation Act merely because her employment only aggravated a preexisting condition.

5. *Must the Condition Be Related to Employment Solely With the Defendant Employer?*

■ Citing *Judson Steel, supra,* plaintiff nevertheless argues that defendants failed to prove the injury was related to work performed while Safeway was her employer. This contention finds no support either in *Judson Steel* or in the governing Labor Code sections. Plaintiff points to no language in *Judson Steel* indicating that the scope of section 132a is restricted to injuries arising out of employment with the employer who discriminated.

Indeed, a subsequent case, *City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 609 [177 Cal.Rptr. 441], negates such an inference. There, the court held section 132a did not apply to a discriminatory act committed when the city was not the applicant's employer. The court explained: "Applicant urges that the words 'employer' and 'employee' as used in section 132a must at a minimum encompass those employers and employees who had an employment relationship at the time of the industrial injury, regardless of whether there was an employment relationship at the time of the discriminatory act. Not so. The principal remedies provided by the statute, aside from the serious and wilful penalty, are reinstatement and recovery of lost wages and employee benefits, necessarily implying an employer-employee relationship at the time of discharge or other act of discrimination. . . . Clearly the statute contemplates an employer-employee relationship at the time of the discharge, threat of discharge or other discriminatory act." (*Id.* at p. 614.)

---

[2] Plaintiff claimed throughout the proceedings below that the condition arose in 1976 while she was a grocery clerk for Safeway's predecessor, Brentwood Market, and she told one of her physicians that the pain "possibly could have been from" having had to stand on the balls of her feet to bag groceries. During her deposition, plaintiff explained that Dr. McDonald's notation, "unable to work at present time due to back pain and stress" referred to the pain and psychological stress resulting from her attempt to adjust to the requirement of wearing closed-toe shoes. Dr. Silberman was unable to render a "firm diagnosis"; however, he reported plaintiff as stating her pain was "secondary to her long work history standing as a grocery checkout clerk," first for Brentwood and then for Safeway. Every physician who examined plaintiff acknowledged that plaintiff's pain was increased by the Safeway requirement that she wear closed-toe shoes.

The interpretation articulated in *City of Anaheim* is well founded in the policy and objectives underlying section 132a, "to deter employers from discriminating against industrially injured employees [and] provid[e] some compensation to the aggrieved worker for discrimination incurred as the result of his injury." (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra*, 22 Cal.3d at p. 668.) The limitation suggested by plaintiff that this section be limited to employer-employee relationships occurring at the inception of a cumulative injury would only contravene such purposes, since an employer could then avoid the consequences of its discriminatory conduct merely by arguing it was not the worker's employer when the injury originated.

The restriction urged by plaintiff is also contrary to the statutory requirement that employers contribute to that portion of cumulative injury incurred in the course of employment with that employer. As noted above, whenever the employee's duties aggravate a preexisting condition, an industrial injury has occurred and the employer is responsible for compensating the employee to the extent of the aggravation. (§ 4663; Cal. Workers' Compensation Practice (Cont.Ed.Bar. 1985) § 1.24, p. 15.) Thus, Safeway would be responsible for any aggravation of plaintiff's symptoms that occurred after 1983, even if the condition originated during the time Safeway's predecessor owned the store.

6. *Were Defendants Required to Prove They Knew Plaintiff's Condition Was Work Related?*

 Relying on *Leamon* v. *Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 1409 [235 Cal.Rptr. 912], plaintiff next argues defendants failed to plead and prove that they knew her handicap was the product of an industrial injury. In *Leamon*, the court refused to find discrimination in the discharge of an employee where only one of the employee's three unexcused absences was known by the employer to be industrially caused. That absence could not be considered to be the result of discriminatory acts of the employer because the employee still had sufficient demerits under the employer's absentee policy to justify the termination. As to the remaining two absences, the employer's action could not be deemed to be predicated upon those absences because the employer was not aware that the absences were caused by industrial injury.

Plaintiff reads too much into *Leamon*. The portion of the holding addressing the employer's lack of knowledge that the two remaining absences were industrially caused does not set forth a new element of a litigant's burden of proof, but only explains why, in this specific factual scenario, the employer could not be held to have discriminated against the employee. Here, it is not contended—certainly not by plaintiff herself—that Safeway

did not discriminate against plaintiff. *Leamon* therefore is not authority for the proposition that the employer must prove it knew the injury was industrially caused in order to assert a defense based on section 132a.

Even if we were to read such a statutory requirement into *Leamon*, it would have no effect on the outcome of this case. It is not disputed that defendants were aware plaintiff claimed she could not work because of her inability to tolerate the required closed-toe shoes. Plaintiff in fact relied on this knowledge in charging defendants with discrimination, since she contended defendants knew closed-toe shoes aggravated her condition and nonetheless suspended her for violating the store rule. Thus, any statutory requirement that the employer know an injury is work related was satisfied here in any event.

Plaintiff presented no other triable factual questions material to the issue of the applicability of section 132a. The trial court therefore correctly ruled that this section constituted plaintiff's exclusive remedy for defendant's alleged discrimination.

DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 1991. Mosk, J., was of the opinion that the opinion should be granted.