[No. C013344. Third Dist. Jan. 12, 1994.]

LELAND ANGELL, Plaintiff and Appellant, v.
PETERSON TRACTOR, INC., Defendant and Respondent.

COUNSEL

John Minoletti for Plaintiff and Appellant.

Hoyt, Miller & Angstadt and Eric P. Angstadt for Defendant and Respondent.

OPINION

NICHOLSON, J.—Is workers' compensation the exclusive remedy for an employee discriminatorily terminated based on a physical handicap arising from a work-related injury? We conclude it is because discrimination based on a work-related physical handicap is a risk explicitly included by the

Legislature in the compensation bargain. (Lab. Code, § 132a; see also *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1100 [4 Cal.Rptr.2d 874, 824 P.2d 680], and cases cited therein.)

SUMMARY OF FACTS AND PROCEDURE

Appellant Leland Angell was employed by respondent Peterson Tractor, Inc., beginning in 1978. In 1982, 1984, and 1985, he suffered heart attacks and received workers' compensation benefits as a result. On January 1, 1986, Peterson Tractor terminated him.

After filing a complaint with and receiving a right to sue letter from the Department of Fair Employment and Housing (Department), Angell sued Peterson Tractor in tort for violation of the Fair Employment and Housing Act (FEHA) and for wrongful termination in violation of fundamental public policy. He alleged the termination was due to discrimination based on his work-related heart condition.[1]

Peterson Tractor moved for summary judgment. The trial court found Angell's evidence sufficiently established discrimination based on his heart condition. However, citing *Pickrel v. General Telephone Co.* (1988) 205 Cal.App.3d 1058 [252 Cal.Rptr. 878], the court held Angell's tort causes of action were preempted by the exclusive remedy provisions of the workers' compensation law. The court entered judgment in Peterson Tractor's favor, and Angell appeals. We affirm.

DISCUSSION

I

*Standard of Review*

Peterson Tractor urges us to apply an abuse of discretion standard in reviewing the summary judgment. However, an abuse of discretion standard

---

[1]Angell's complaint also alleged causes of action for breach of contract and the covenant of good faith and fair dealing (first cause of action), declaratory relief (third cause of action), intentional and negligent infliction of emotional distress (fifth cause of action), intentional and negligent interference with the employment relationship (sixth cause of action), and civil conspiracy (seventh cause of action). During a brief removal of this case to the United States District Court for the Eastern District of California, summary judgment was granted on the first cause of action alleging breach of contract and the covenant of good faith and fair dealing. Upon remand to the state court, summary judgment was granted as to all remaining causes of action, including violation of the FEHA (second cause of action) and termination in violation of fundamental public policy (fourth cause of action). On appeal from the judgment, Angell takes issue only with summary judgment as to the second and fourth causes of action.

is inappropriate; the correct standard is independent review. (*Davis v. Gaschler* (1992) 11 Cal.App.4th 1392, 1396 [14 Cal.Rptr.2d 679]; *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1515 [285 Cal.Rptr. 385].) The only exception to the independent review standard applies when we review a trial court's exercise of discretion as allowed by Code of Civil Procedure section 437c, subdivision (e). Under all other circumstances, it is legally and procedurally incorrect to apply an abuse of discretion standard. (*Schrader v. Scott* (1992) 8 Cal.App.4th 1679, 1683 [11 Cal.Rptr.2d 433].) Thus, we must independently determine whether Peterson Tractor established Angell could not prevail as a matter of law. (*Davis v. Gaschler, supra,* 11 Cal.App.4th at p. 1396.)

II

*The Legal Foundation of Angell's Causes of Action*

*A. The FEHA Cause of Action*

The FEHA declares it is the public policy of this state to protect individuals from discrimination in employment matters on the basis of physical handicap, among other things. (Gov. Code, § 12920.)[2] The statute makes it an unlawful employment practice to terminate a person based on physical handicap except under specified circumstances not applicable to this case.[3] (Gov. Code, § 12940.)[4]

 " 'Physical handicap,' " as defined by the FEHA at the time of Angell's termination, "includes impairment of sight, hearing, or speech, or

---

[2]At the time of Angell's termination in 1986, Government Code section 12920 stated, in part:

"It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age.

"It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general."

[3]Peterson Tractor makes no claim the discrimination, if any, was justified under the statute.

[4]At the time of Angell's termination, Government Code section 12940 stated, in part:

"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

"(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment."

impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services." (Gov. Code, § 12926, subd. (h).) However, this list is not restrictive. More broadly, "physical handicap" is any physical condition, whether or not presently disabling, " 'that makes achievement unusually difficult.' " (*American National Ins. Co. v. Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 609 [186 Cal.Rptr. 345, 651 P.2d 1151].) Although Angell had a full release to return to work after the last heart attack and was fully able to perform his employment duties, his heart condition falls within "physical handicap" as used in the FEHA. (See *id.* at pp. 609-610.)

Under the FEHA, an aggrieved person may file a complaint with the Department. (Gov. Code, § 12960.) If the Department decides not to prosecute the case or does not take action within 150 days after the filing of the complaint, it must give the aggrieved person a right to sue letter which authorizes the person to file a civil suit based on the claim. (Gov. Code, § 12965, subd. (b).) Claiming Peterson Tractor violated the FEHA by discriminatorily terminating him because of his heart condition, Angell followed this statutory procedure and ultimately filed this suit against Peterson Tractor.

### B. *The Cause of Action for Wrongful Termination in Violation of Fundamental Public Policy*

■ Angell also stated a cause of action for wrongful termination in violation of fundamental public policy. This cause of action is grounded in the common law. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) In *Tameny,* the Supreme Court held an action in tort lies for any termination which violates fundamental public policy. (*Id.* at p. 177.) The Supreme Court later refined the definition of "fundamental public policy" to include a termination which "is against public policy and affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee. . . . [D]isparagement of a basic *public* policy must be alleged . . . ." (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 669 [254 Cal.Rptr. 211, 765 P.2d 373], italics in original.) The public policy also must be grounded in some statutory or constitutional provision. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1095.) Although the FEHA cause of action is based in statute and the *Tameny* cause of action is based on the common law, they both rely on the public policy stated in the FEHA. (Gov. Code, § 12920.)

### III

*Applicability of Workers' Compensation Remedies*

■ Angell's termination also gives rise to a claim under the workers' compensation law because his heart condition was work related. Labor Code section 132a declares it is the "policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment." At the time of Angell's termination in 1986, Labor Code section 132a, subdivision (1), stated: "Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

■ Labor Code section 132a, on its face, only provides a remedy against employers who retaliate for a worker's use of the workers' compensation system. However, the Supreme Court has interpreted the broad policy language of section 132a to provide the increased workers' compensation remedies of section 132a for *any* discrimination against an employee based on a work-related injury. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (*Judson*) (1978) 22 Cal.3d 658, 667 [150 Cal.Rptr. 250, 586 P.2d 564].)
■ Thus, taking as true Angell's evidence he was unlawfully terminated because of his work-related heart condition, the termination was in violation of section 132a and the remedies provided in section 132a are available.

Injuries resulting from an employee's termination may be subject to the exclusive remedy provisions of the workers' compensation law. (See Lab. Code, § 3602; *B & E Convalescent Center* v. *State Compensation Ins. Fund* (*B & E Convalescent*) (1992) 8 Cal.App.4th 78, 89 [9 Cal.Rptr.2d 894]; *Portillo* v. *G. T. Price Products, Inc.* (1982) 131 Cal.App.3d 285, 287 [182 Cal.Rptr. 291].) In *Portillo*, the employer retaliated against the employee in violation of Labor Code section 132a by terminating her because she filed a workers' compensation claim. (131 Cal.App.3d at p. 286.) The court held the aggrieved worker could not maintain a *Tameny* cause of action because workers' compensation remedies were available and, therefore, exclusive. (*Id.* at p. 290.)

The Court of Appeal, in 1988, held the workers' compensation remedy for discrimination based on a physical handicap resulting from a work-

related injury is exclusive. (*Pickrel* v. *General Telephone Co., supra,* 205 Cal.App.3d at pp. 1063-1064.) In *Pickrel,* as here, the employee was terminated because of a work-related physical handicap. She sued the employer for violation of the FEHA. (*Id.* at p. 1060.) Acknowledging the holding in *Judson* that all discrimination against an employee because of a work-related injury is forbidden by Labor Code section 132a and noting the exclusivity of the workers' compensation remedies for violation of section 132a as stated in *Portillo,* the Court of Appeal affirmed the trial court's dismissal of the complaint based on workers' compensation exclusivity.[5] (205 Cal.App.3d at p. 1064.) *Pickrel* is precedent for holding the workers' compensation law provides the exclusive remedy in this case; however, intervening developments in the law concerning workers' compensation exclusivity make it necessary to continue our analysis.

## IV

### Developments in the Law After Pickrel

In 1990, the California Supreme Court stated, "[D]isabling injuries, whether physical or mental, arising from termination of employment are *generally* within the coverage of workers' compensation and subject to the exclusive remedy provisions, unless the discharge comes within an express or implied statutory exception or the discharge results from risks reasonably deemed not to be within the compensation bargain." (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054] (*Shoemaker II*), italics added.) In *Shoemaker II,* a state agency terminated an employee in violation of the whistleblower statute. (*Id.* at p. 9.) The court concluded workers' compensation, although a potential remedy, was not the exclusive remedy. (*Id.* at pp. 20-23.)

Relying on *Shoemaker II* and other cases, the Court of Appeal has held terminations giving rise to causes of action based on the FEHA and *Tameny* are similarly outside the compensation bargain and, therefore, are not subject to the exclusive remedy provisions. These cases involve employers' actions which violate substantial and fundamental public policies grounded in statute. (See *B & E Convalescent, supra,* 8 Cal.App.4th at pp. 91-92; *Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407, 1417 [4 Cal.Rptr.2d 203] (*Shoemaker III*).)

---

[5]Both parties inappropriately attempted to cite and argue *Hartman* v. *Mathis & Bolinger Furniture Co.* (Cal.App.) F013070. *Hartman* disagreed with *Pickrel.* The Supreme Court granted review of *Hartman* on August 22, 1991, and on April 1, 1993, dismissed review as improvidently granted. The court did not order publication of the Court of Appeal opinion. (Cal. Rules of Court, rule 29.4(c).) Thus, *Hartman* is not published, and never has been during the pendency of this appeal. We may not rely on it. (Cal. Rules of Court, rule 977; *Morgan Hill Unified School Dist.* v. *Amoroso* (1988) 204 Cal.App.3d 1083, 1085 [252 Cal.Rptr. 1].)

On remand from *Shoemaker II*, this court considered whether the employee's *Tameny* cause of action was preempted by the exclusivity provisions of the workers' compensation law, a question not decided by the Supreme Court in *Shoemaker II*. (*Shoemaker III, supra,* 2 Cal.App.4th at pp. 1417-1419.) We stated: "Because a viable *Tameny* claim requires employer conduct implicating a substantial public interest, such a claim lies outside the compensation bargain. As explained in [*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 (233 Cal.Rptr. 308, 729 P.2d 743)], the compensation bargain involves a tradeoff between the employer and employee whereby the employee gives up a wider range of damages potentially available in tort in exchange for relatively swift and certain payment of benefits without the necessity of proving fault. But where an employer's conduct implicates considerations of substantial public policy, interests beyond those of the employer and employee are involved. These interests are not protected by workers' compensation law and therefore must be accommodated outside the compensation bargain. We thus conclude a *Tameny* claim is not preempted by the exclusive remedy provisions of the workers' compensation law." (*Id.* at pp. 1418-1419.)

Later, the Supreme Court also held a *Tameny* cause of action is not preempted by workers' compensation exclusivity. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1098.) The court declared: "[W]e decline the invitation to retreat from our long-held view that employees discharged in violation of fundamental public policy may bring an action against their employers sounding in tort." (*Ibid.*)

Even before *Shoemaker II*, several cases held certain causes of action, including those alleging race and gender discrimination, based on the FEHA are also exempted from workers' compensation exclusivity. (See, e.g., *Meninga* v. *Raley's, Inc.* (1989) 216 Cal.App.3d 79 [264 Cal.Rptr. 319] [gender discrimination]; *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794 [244 Cal.Rptr. 37] [race discrimination].) In a case decided after *Shoemaker II*, the Court of Appeal applied *Shoemaker II* and decided causes of action for violations of the FEHA based on age, gender, and race discrimination are not preempted by the workers' compensation law. (*B & E Convalescent, supra,* 8 Cal.App.4th at pp. 87, 91-92.) The court stated: "[T]he causes of action [alleging age, gender, and race discrimination] fall squarely within those categories of actions which have been held to violate fundamental and substantial public policies delineated in important state statutes, and which are consequently excepted from the exclusive coverage provisions of workers' compensation." (*Ibid.*)

Thus, the cases have held the workers' compensation law is not the exclusive remedy for actions which, in addition to potential workers' compensation claims, also give rise to causes of action under the FEHA and

*Tameny.* The common, underlying rationale for these exceptions to workers' compensation exclusivity lies in the determination they are not "'a risk reasonably encompassed within the compensation bargain.'" (*Gantt, supra,* 1 Cal.4th at p. 1101.) In *Gantt,* the Supreme Court borrowed language from its opinion in *Foley* to illustrate this principle: "Just as the individual employment agreement may not include terms which violate fundamental public policy [citation], so the more general 'compensation bargain' cannot encompass conduct, such as sexual or racial discrimination, 'obnoxious to the interests of the state and contrary to public policy and sound morality.'" (*Ibid.*)

## V

### *"Compensation Bargain Defined by Determining Legislative Intent*

The term "compensation bargain" was first used to describe the compromise of liability and rights between the employer and employee by the Supreme Court in *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743]. The court did not define the term in *Cole.* However, in *Shoemaker II,* the court described the "compensation bargain" as a legal theory "pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (52 Cal.3d at p. 16.)

Thus, the compensation bargain is a legislative creation which includes conduct for which remedies are provided exclusively by the workers' compensation law. What is included in the compensation bargain is a matter of legislative will, and only by finding the Legislature did not intend to include a specific set of circumstances within the compensation bargain can the courts grant the standard tort remedies because "[t]he function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.'" (*Shoemaker II, supra,* 52 Cal.3d at p. 16.)

The *Shoemaker II* court found the Legislature specifically intended to grant tort remedies in addition to the workers' compensation law for violation of the whistleblower statute. (52 Cal.3d at p. 22.) The court stated injuries caused by termination are compensable *generally* under the workers' compensation law because they occur in the normal course of employment. However, the exclusive remedy provisions did not necessarily preclude

recovery under the whistleblower statue if the employer's conduct was not reasonably included within the compensation bargain or, in other words, if the Legislature intended to provide additional remedies. (*Id.* at p. 20.)

In determining the Legislature intended to grant remedies in addition to those accorded by the workers' compensation law, the *Shoemaker II* court used two tools of statutory interpretation. First, the court used the canon which requires courts to give effect to the more specific statute over the general statute when two statutes are in conflict. It found the workers' compensation law applied only generally because it applied to injuries arising from any termination, while the whistleblower statute applied specifically because it provided a remedy to a limited class of employees for damages caused by abuse of official power. (*Shoemaker II, supra,* 52 Cal.3d at pp. 21-22.) Second, the court used the canon which requires the courts to adopt the interpretation which gives effect to a statute rather than rendering it superfluous. The court concluded the whistleblower statute would be meaningless if not interpreted to afford a remedy in addition to those afforded by the workers' compensation law. (*Id.* at p. 22.)

The *Shoemaker II* court's use of two interpretive tools for discerning legislative intent is instructive. The court found it necessary to determine whether the Legislature intended to grant remedies in addition to the remedies available under the workers' compensation law or intended to make the workers' compensation law the exclusive remedy. ▮ Our task is the same. We must determine whether the Legislature intended the workers' compensation law to provide the exclusive remedy for discriminatory termination based on a work-related injury or intended to grant or allow additional remedies.

▮ Before determining the Legislature's intent, however, we must examine a further view of the Supreme Court concerning the scope of the compensation bargain. In *Cole,* the court identified instances in which the exclusive remedy provisions of the workers' compensation law do not apply even when there is no statute granting remedies in addition to those included in the workers' compensation law: "The cases that have permitted recovery in tort . . . have involved conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles. (*Johns-Manville Products Corp.* v. *Superior Court* [(1980)] 27 Cal.3d 465, 477-478 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063]; *Magliulo* v.

*Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621]; *Ramey v. General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402 [343 P.2d 787].)" (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 161.) Each case cited in this passage from *Cole* found the *Legislature* did not intend to include the specific situation within the exclusive remedy provisions.[6]

*Shoemaker II* cited this passage from *Cole* and the cases included in the passage and collectively defined the conduct in those cases " 'as not stemming from a risk reasonably encompassed within the compensation bargain.' " (52 Cal.3d at p. 16.) Hence, this phrase, "not stemming from a risk reasonably encompassed within the compensation bargain," refers to risks the *Legislature* did not intend to include in the compensation bargain.

In *Gantt, supra,* 1 Cal.4th at page 1100, the Supreme Court again used part of the passage from *Cole* and the added definition from *Shoemaker II*. It concluded the conduct giving rise to the cause of action for wrongful termination in violation of fundamental public policy was "most assuredly not a 'normal' risk of the employment relationship subject to the exclusive remedy provisions of the Labor Code." (*Ibid.*) Even though *Shoemaker II* and *Gantt* did not frame the issue—whether the exclusive remedy provisions apply to the injuries caused by the particular conduct—in terms of determining legislative intent, their discussions cited to and used language from cases which were clearly based on legislative intent. Therefore, the scope of the "compensation bargain" is a legislative creation, and a determination of whether a "discharge results from risks reasonably deemed not to be within the compensation bargain" (*Shoemaker II, supra,* 52 Cal.3d at p. 7) is an exercise in ascertaining legislative intent.

---

[6]In *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 478 [165 Cal.Rptr. 858, 612 P.2d 948), the court found workers' compensation was not the exclusive remedy for injuries caused by an employer's failure to notify the employee of known health risks. In doing so, the court said it could not "believe that the Legislature in enacting the worker's compensation law intended to insulate such flagrant conduct from tort liability." (*Ibid.*) In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063], the court concluded a workers' compensation insurer's conduct went beyond that contemplated by the workers' compensation law. Allowing a tort cause of action to proceed, the court stated: "A deceitful investigation, in place of an honest one, frustrates the laudable objectives of the work[ers'] compensation law." (*Ibid.*) Likewise, the court in *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621], based its holding on the Legislature's intent concerning the scope and objectives of the exclusivity provisions: "[T]he Legislature did not intend the provisions now found in section 4553 to be a substitute for the relief which could be afforded for an intentional assault." Finally, in *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402-403 [343 P.2d 787], the court held workers' compensation was not the exclusive remedy for injuries caused by the employer's fraud. It stated: "Surely, the Legislature never intended that an employer's fraud was a risk of employment." (*Ibid.*)

## VI

*Legislative Intent Concerning Remedies for Injuries Caused by Discrimination Based on a Work-related Physical Handicap*

Neither *Pickrel,* which held the workers' compensation law provides the exclusive remedy for termination based on a work-related physical handicap, nor cases that have relied on *Pickrel* have decided whether the discrimination based on a physical handicap could be considered " 'a risk reasonably encompassed within the compensation bargain.' " (*Gantt, supra,* 1 Cal.4th at p. 1101.) The *Pickrel* court based its conclusion solely on the fact Labor Code section 132a specifically provides a remedy for discrimination based on a work-related physical handicap. Relying on the holding in *Pickrel, Fortner* v. *Safeway Stores, Inc.* (1991) 229 Cal.App.3d 542, 547-548 [280 Cal.Rptr. 409], applied the same reasoning to hold workers' compensation is the exclusive remedy for an employer's discrimination based on a work-related injury. *Denney* v. *Universal City Studios, Inc.* (1992) 10 Cal.App.4th 1226, 1235 [13 Cal.Rptr.2d 170], likewise followed *Pickrel.* *Pickrel, Fortner,* and *Denney* made no attempt to apply the compensation bargain theory to the problem of workers' compensation exclusivity. Instead, they found workers' compensation exclusive simply because it was available.

These cases correctly noted the workers' compensation law provides a remedy for injuries caused by an employer's discrimination based on a work-related physical handicap. Nonetheless, as stated in *Shoemaker II,* "[t]his determination does not . . . resolve the issue whether the exclusive remedy provisions of the workers' compensation law act as a bar to all causes of action arising from a discharge. As we have explained, the provisions are intended to effectuate and implement the fundamental 'compensation bargain' said to underlie the workers' compensation scheme. Where the injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain a separate civil action may lie." (52 Cal.3d at p. 20.) Accordingly, we must determine whether the Legislature intended Labor Code section 132a to provide the exclusive remedy for discrimination based on a work-related injury.

The Legislature, by adopting Labor Code section 132a, provided a remedy for injuries caused by discrimination based on a work-related injury. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 667.) The *Judson* court declared: "[A]n employer who discriminates against a worker injured in the course and scope of employment is subject to payment of the

increased compensation [as provided in section 132a]. By so interpreting section 132a we will not only encourage compensation for injured workers, but also secure compliance with the workers' compensation laws." (*Id.* at p. 668.)

As stated in *Shoemaker II*, the workers' compensation law provides remedies for injuries sustained as a result of termination under the *general* provisions granting remedies for injuries arising out of the normal course of employment. (52 Cal.3d at p. 7.) However, discriminatory termination based on a work-related injury is specifically proscribed in Labor Code section 132a and a specific remedy is afforded. Unlike the situation in *Shoemaker II* where the court found the specific whistleblower statute controlled over the general workers' compensation statute, we are faced with a workers' compensation statute which proscribes specifically discrimination based on a work-related injury and provides a remedy for such discrimination. The FEHA, on the other hand, is more general because it proscribes all employment discrimination based on a physical handicap, whether work-related or not.

Thus, the Legislature manifested its intent to deal with this particular form of discrimination in the workers' compensation scheme. The compensation bargain, as reflected in Labor Code section 132a, requires the employee to prove the employer's fault, that is, discrimination, unlike other aspects of the compensation system. However, in return, the employee's compensation is increased by one-half, up to $10,000. Given the Legislature's intent to include this form of discrimination in the workers' compensation system, we conclude section 132a controls over the more general FEHA and *Tameny* remedies.

In addition, the Legislature's specific treatment of discrimination based on a work-related injury demonstrates the Legislature's determination this form of discrimination is a risk reasonably included in the compensation bargain. Labor Code section 132a, itself, shows the Legislature intended all actions arising under that section to be subject to the exclusive remedy provisions. It states: "The [Workers' Compensation Appeals Board] is vested with *full* power, authority, and *jurisdiction* to try and determine *finally* all matters specified in this section subject only to judicial review . . . ." (Italics added.) This provision gives the appeals board exclusive jurisdiction. That the word "exclusive" does not appear in the provision is not significant because the provision gives the appeals board *full* and *final* jurisdiction.[7] (*Portillo* v. *G. T. Price Products, Inc., supra,* 131 Cal.App.3d at pp. 287-289.)

We recognize, as stated above, causes of action for other terminations in violation of the FEHA and fundamental public policy are not barred by the

---

[7]Much of the argument in the dissent relies on the premise section 132a does not contain its own exclusivity provision. (See dis. opn., *post,* at p. 1000.) The premise is flawed because

exclusive remedy provisions. Nonetheless, the Legislature specifically placed this type of discriminatory termination within the scope of the compensation bargain. "Workers' compensation law enforces an employer's liability to compensate workers for injury or disability sustained in the course of their employment, irrespective of the fault of any party. [Citation.] It is not designed to combat employment discrimination, *except in the case of employers who discriminate against industrially injured employees . . . ."* *(Meninga* v. *Raley's, Inc., supra,* 216 Cal.App.3d at p. 88, italics added.) Furthermore, in the FEHA, the Legislature provided: ". . . Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights *Law or of any law of this state relating to discrimination because of . . . physical disability . . . ."* (Gov. Code § 12993, subd. (a), italics added.) Thus, an intent to affect the compensation bargain, as it relates to discrimination based on physical disability, is disclaimed.

■ Establishing a violation of public policy is not sufficient to overcome the exclusive remedy provisions of the workers' compensation law if the Legislature intended the provisions to apply. ■ "[I]t is elementary that the Legislature has power, absent constitutional restrictions, expressly to amend or repeal both the common law and existing statutes." *(Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 780 [189 Cal.Rptr. 212].)

In *Portillo* v. *G. T. Price Products, Inc., supra,* 131 Cal.App.3d at page 287, the plaintiff argued there was a need for and a public policy reason to support a tort cause of action for discriminatory termination. The court answered: "[I]t appears that the Legislature has decided the answer to that particular need by enacting Labor Code section 132a. Plaintiff argues in effect that the statute is insufficient because it does not give her enough and it does not punish the employer enough. That argument should be addressed to the Legislature, not to the court. The Legislature has spoken on the very subject, i.e., how the wrong of which plaintiff complains shall be redressed." *(Ibid.)*

■ Unlike retaliation against whistleblowers and discrimination based on race, gender, and age, discrimination based on a work-related injury is conduct the Legislature specifically includes in the compensation bargain. Therefore, the exclusive remedy provisions, especially the provision contained in Labor Code section 132a, bar any other remedy against the employer.

This result applies to both the FEHA and *Tameny* causes of action because the conclusion the conduct falls within the compensation bargain is not

---

section 132a, itself, gives the appeals board full and final jurisdiction over all matters involving an employer's discrimination based on an employee's work-related injury.

dependent on the nature of the cause of action or right asserted in the tort proceeding. The scope of the compensation bargain is determined by ascertaining the conduct for which the Legislature intended to provide remedies exclusively within the workers' compensation law. We cannot usurp the power of the Legislature by labeling conduct as a risk not reasonably included in the compensation bargain (see *Gantt, supra*, 1 Cal.4th at p. 1101) if the Legislature expressly includes that conduct in the compensation bargain.

The compensation bargain is meant to protect and benefit both employee and employer. When conduct falls within the compensation bargain, both employee and employer are entitled to the protection and benefit. Under the circumstances of this case, the employee reaps the benefit of collecting a possible increase in compensation by 50 percent if the employer violates Labor Code section 132a. The employer enjoys the bar against the employee's claims in other forums by the effect of the exclusive remedy provisions.[8]

In conclusion, Angell's causes of action for termination in violation of the FEHA and fundamental public policy are barred by the exclusive remedy provisions of the workers' compensation law. The appeals board has full and final jurisdiction to grant remedies for injuries which may have been sustained due to the termination based on a physical handicap arising from a work-related injury.[9] (Lab. Code, § 132a.)

DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., concurred.

RAYE, J.—I respectfully dissent. The majority affirms "because discrimination based on a work-related physical handicap is a risk explicitly included by the Legislature in the compensation bargain." (Maj. opn., *ante*, at pp. 984-985.) They are mistaken.

---

[8]The dissent concludes section 132a is a one-sided bargain in favor of the employer which does not fit the compensation bargain paradigm. (Dis. opn., *post*, at p. 998.) Yet, in making this judgment, the dissent fails to recognize damage proven under section 132a are increased by one-half, up to $10,000. While this increase may not compare with some of the large damages awards in tortious discrimination cases, it represents the Legislature's determination of the appropriate quid pro quo. The employee must prove discrimination based on a work-related handicap, and the employer must pay increased damages.

[9]Given this conclusion, we need not consider Peterson Tractor's other contentions in support of the judgment.

This is not a case about the mythical "compensation bargain" of workers' compensation lore. Were it so, plaintiff's claim, as a matter of equity, would be unassailable. The "compensation bargain" reflects the Legislature's view of the basic understanding between employers and employees that underlies the workers compensation system. The court in *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054] (*Shoemaker II*) explains the bargain thus: the employer assumes liability for a greater range of conduct in exchange for limitations on dollar exposure; the employee gains swift and certain payment of compensation without having to prove fault but in exchange must accept limits on amounts recoverable. (*Shoemaker II, supra,* 52 Cal.3d at p. 16.)

The remedies provided by Labor Code section 132a do not fit within this metaphorical paradigm. Under Labor Code section 132a, the employee must still prove fault—it cannot be assumed that every dismissed employee with a work-related physical handicap was fired for that reason—and as a consequence payment is neither swift nor certain. And yet the employee still must accept limits on the amounts recoverable. Viewed in isolation, it is difficult to imagine a more one-sided "bargain." Even when considered as part of the full panoply of rights and obligations established by the Workers' Compensation Act, a "bargain" which incorporates section 132a would be suspect.

Nor does this case implicate the exclusivity provisions of the Workers' Compensation Act. As explained in *Shoemaker II,* the basic "compensation bargain," and the workers' compensation exclusivity provisions which implement the bargain, relate to compensation for "injury," a term limited to physical injury and disabling emotional injury. "[T]he fundamental basis of workers' compensation is an injury sustained in and arising out of the course of employment when the injury is 'personal physical injury or death.' . . . [T]he exclusive remedy provisions apply *only* in cases of such industrial personal injury or death." (*Shoemaker II, supra,* 52 Cal.3d at p. 16, italics in original, citations omitted; see also *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 806-7 [244 Cal.Rptr. 37].) In *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744 [7 Cal.Rptr.2d 808, 828 P.2d 1195] the court extended the concept of injury to disabling emotional injury, unaccompanied by physical injury. This limitation of workers' compensation exclusivity to claims for physical or emotional injury follows naturally from the language of Labor Code section 3601 which expressly limits the exclusivity of workers' compensation to actions for "injury or death of an employee."

While his complaint and appellate papers are not models of clarity, it is clear plaintiff in the present case seeks recovery for neither injury nor death. Indeed, plaintiff apparently concedes that workers' compensation is the

exclusive remedy for physical and emotional injuries arising from his wrongful termination. He seeks in this action to recover under Labor Code section 132a for lost wages, and other economic damages resulting from his dismissal—not for "injury or death." The majority ignores this fundamental issue and instead expends much analytical energy on a nonissue, viz., whether the employer's conduct (the act of terminating plaintiff based on his work related injuries) falls within the compensation bargain. I concur with the majority's treatment of this latter issue but find the analysis irrelevant to the disposition of plaintiff's claims; because plaintiff's alleged injuries do not fall within the bargain, whether the employer's conduct falls within or outside of the bargain is of no consequence.

The critical issue in this case is not whether the extraordinary remedies provided by Labor Code section 132a fall within the "compensation bargain" and the exclusivity provisions of the workers' compensation laws—they clearly do not. Any claim that the provisions of section 132a were intended to be exclusive must rest on a finding the section itself, independent of the exclusivity provisions of the workers' compensation laws, was intended to provide exclusive remedies for the conduct proscribed therein.

There are reasons to believe the Legislature intended the remedies provided by section 132a to be exclusive. The majority correctly observes that Labor Code section 132a is a specific statute which addresses a narrow range of discriminatory conduct—discrimination based on work-related injuries. Arguably, it should prevail over the FEHA which proscribes all employment discrimination based on physical handicap, whether work-related or not. One might reasonably ask, as did the court in *Portillo*, "If [section 132a] does not apply here, why have the statute at all?" (*Portillo* v. *G. T. Price Products, Inc.* (1982) 131 Cal.App.3d 285, 289-290 [182 Cal.Rptr. 291].) There are also compelling policy reasons to confine all employee-employer disputes to a single forum and a single body of statutory law. It is also true that ". . . where a new right, one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others. [Citations.]" (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 112 [180 P.2d 321, 171 A.L.R. 913].)

Other factors, however, compel a contrary result. As noted by the majority, Labor Code section 132a does not expressly embrace the conduct here at issue; on its face the section only provides a remedy for wrongful discharge of an employee who seeks relief under the workers' compensation system. The Supreme Court's determination that section 132a created remedies for discrimination based on work-related injury is premised on a declaration of policy contained in 1972 amendments to section 132a. (*Judson Steel Corp.* v.

*Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 667 [150 Cal.Rptr. 250, 586 P.2d 564].) In 1972 the FEHA had not been enacted, and neither the Labor Code nor any other statute prohibited the conduct for which plaintiff now seeks redress. By 1972 the Supreme Court had recognized an action for tortious discharge in violation of public policy (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], a concept expanded in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), although no case had applied the principle to a firing for work-related injury. Thus, in 1972 section 132a by default provided the exclusive remedies for wrongful termination premised on work related injury. The question is whether such remedies remain exclusive in light of the later enactment of protections for the physically handicapped now embodied in the FEHA and in the face of further evolution of the tort of wrongful discharge.

The majority would respond in the affirmative, effectively holding that a statute narrowly drawn to address a specific form of discrimination in a particular setting, the discharge of workers for work related injuries, must remain the exclusive remedy even as the legislature passes statutes of broader scope providing arguably greater protections. Workers who formerly enjoyed far greater protection than the general populace are thus denied the benefits available to the public generally. It is no answer to suggest that the legislature could have easily amended Labor Code section 132a to provide the remedies provided by the FEHA; there is no indication in the language of the FEHA that its protections were not to be available to workers whose physical handicaps were job-related, and no language in section 132a suggests that its remedies were to be exclusive. The outcomes are anomalous. A worker who is fired for a physical handicap resulting from injuries suffered while on a skiing vacation may seek relief under the FEHA, while a worker fired because of injuries suffered in the service of the worker's employer is restricted to the remedies provided by section 132a.

Under the majority's reasoning, the remedies provided by Labor Code section 132a will remain exclusive unless later enacted statutes expressly provide otherwise. This places a burden on the Legislature in enacting new remedies to survey existing laws and ferret out statutory remedies which, though not expressly made exclusive, could be judicially construed as such. This curious role reversal, with the Legislature attempting to divine "judicial intent," is inappropriate.

Plaintiff's effort to craft a cause of action for tortious discharge in violation of public policy is problematic because of his failure to identify a source of that policy beyond the FEHA and Labor Code section 132a, both

of which provide remedies for the policy violation. (Cf. *Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514, 520 [194 Cal.Rptr. 520].) Nonetheless, he states a viable claim under the FEHA for backpay and other economic damages resulting from defendant's discriminatory acts. Section 132a does not foreclose resort to FEHA remedies. While plaintiff's only resort for physical or disabling emotional injuries resulting from his wrongful termination was under the workers' compensation system, he has a choice with respect to economic damages: he may pursue the limited remedies offered by section 132a or the more expansive, but more cumbersome, remedies available under the FEHA.

Appellant's petition for review by the Supreme Court was denied May 4, 1994. Mosk, J., Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.