[No. B073482. Second Dist., Div. Four. May 5, 1995.]

RALPH WHITFORD, Plaintiff and Appellant, v.
SWINERTON & WALBERG COMPANY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II(A) and (B).

COUNSEL

Lewis, Marenstein, Wicke & Sherwin, Thomas L. Hoegh and Jean Ballantine for Plaintiff and Appellant.

Negele, Knopfler, Pierson & Robertson, Knopfler & Robertson, George Knopfler, Kevin M. Davis and Arthur E. Schwimmer for Defendant and Appellant.

OPINION

WOODS (A. M.), P. J.—Defendant Swinerton & Walberg Company (Swinerton), a general contractor, appeals the judgment entered against it in a personal injury action brought by plaintiff Ralph Whitford (Whitford).

The relevant facts are as follows: On April 28, 1989, Swinerton was the general contractor on the construction of a 52-floor high-rise building in downtown Los Angeles known as the Mitsui Building. Whitford was a carpenter employed by Martin Brothers, a subcontractor on the project. Martin Brothers's task was to fireproof the structural steel and to install drywall framing and drywall. The building was not yet enclosed by an exterior skin, but consisted of the structural steel and floor platforms.

As a general contractor, Swinerton bore the responsibility of formulating the work plan and the safety program on the project and ensuring that the workers had a safe workplace. Swinerton employed a safety officer on the project named Eric Skaggs, whose job was to "act as a monitor and enforcement officer, in effect, to make sure that safety [was] being maintained on the job site." This task included seeing that the project was in compliance with safety regulations promulgated under the federal Occupational Health and Safety Act (Fed/OSHA), which then governed private sector worker safety in California. Such compliance was the joint responsibility of the general contractor and the subcontractors. Additionally, as a term of its contract with Mitsui Fudosan, Swinerton had agreed to follow all prevailing government codes and regulations.

Whitford was working around an open elevator shaft on the eighth floor of the project, putting up coreboard. Coreboard is a type of drywall used to enclose an elevator shaft and is installed from outside the shaft. He was attempting to fit a section of coreboard between a track attached to the bottom of the floor above him and a track on the ground. The coreboard was 12 feet tall, 2 feet wide, an inch thick and weighed 100 pounds. Ordinarily, coreboarding is a two-person job, but Whitford's foreman, Mike Smith, also employed by Martin Brothers, instructed him to install the coreboard by himself.[1]

There were several Fed/OSHA regulations that set forth safety measures to prevent workers from falling into open floor holes. Those regulations required the use of lifelines, safety belts and lanyards and also called for the installation of guard rails and toeboards around the shafts. Some of those precautions were taken here. Guard rails were installed around the elevator shafts and workers were equipped with safety harnesses. The guard rails consisted of poles embedded in cement around the elevator shafts from which two cables were strung, at knee and waist height. Donald Davis, who was Swinerton's senior project manager, testified that installation of the safety cables was the "first step" taken by Swinerton to prevent workers from falling into the shafts. Swinerton was also responsible for removing the railing once work was completed on a particular shaft. Martin Brothers provided its workers with safety harnesses consisting of a lanyard or a belt and a rope that clipped to the belt at one end and to the safety railing cables at the other.[2]

Because the coreboard panels were so heavy, it was the practice of the workers installing them to lower the top cable of the safety railing even though this was a safety violation. Swinerton was aware of this practice and, according to Mike Smith, Whitford's foreman, agreed to it. Minutes of safety meetings convened by Swinerton with its subcontractors demonstrated that Swinerton was aware of a problem with the subcontractors lowering the cables, but Swinerton never directed any of its employees to investigate the problem or solve it. Even with the top cables down, the installers had some protection from the bottom cable to prevent falling into the shaft. They could also clip their safety harnesses to the bottom cable.

The shaft where Whitford was working was completely open and unprotected. As he was attempting to lift the panel into the track, a gust of wind

---

[1] There is no dispute that Martin Brothers was also negligent or that its negligence was a cause of Whitford's injury. The issue on appeal, however, is Swinerton's negligence which the jury found was the far greater cause of Whitford's injury. We view the evidence in the light most favorable to that finding. (*Schnabel* v. *Superior Court* (1993) 5 Cal.4th 704, 718 [21 Cal.Rptr.2d 200, 854 P.2d 1117].)

[2] It is not clear from the record whether Swinerton's workers or a subcontractor put the guard rails up but it is clear that they were installed at Swinerton's behest.

blew him backwards.[3] He pushed forward, still trying to fit the coreboard into the track, but missed. The top of the coreboard went out over the shaft and began to take him down with it. He pulled back as hard as he could, managed to regain control of the board and was able to fit it in between the tracks.

Afterward, Whitford felt a burning on the left side of his lower back but walked it off and returned to work. The next day he left on a scheduled vacation. While he was away the pain worsened and he eventually consulted a doctor who diagnosed him as having a herniated disc. As a result of his injury, Whitford was unable to return to his work as a carpenter. He received a workers' compensation award based on a 37 percent disability rating.

On April 24, 1990, Whitford filed a complaint against Swinerton and Mitsui Fudosan (USA), Inc., alleging two causes of action, for negligence and peculiar risk.[4] Swinerton answered. The matter was tried before a jury and a verdict on special issues was rendered in Whitford's favor.

The jury found specifically that Swinerton was negligent and its negligence was a cause of Whitford's injury. In addition, the jury also found that Swinerton was vicariously liable on a peculiar risk theory for Martin Brothers's negligence. The jury assessed the percentages of negligence as follows: 8 percent to Whitford, 69 percent to Swinerton, 20 percent to Martin Brothers and 3 percent to other causes. The jury awarded Whitford economic damages of $651,000 and noneconomic damages of $900,000 for a total of $1,551,000.

Swinerton filed motions for judgment notwithstanding the verdict, for new trial and objections to the proposed judgment in which it sought issuance of a remittitur. The court denied the former motions but agreed with the argument made by Swinerton in its objections to the proposed judgment that under Proposition 51 (Civ. Code, §§ 1431, 1431.2), its liability for noneconomic loss was limited to the percentage of its actual fault. Accordingly, the trial court declined to impute Martin Brothers's 20 percent liability to Swinerton under the peculiar risk doctrine and issued a remittitur reducing the award for noneconomic loss from $900,000 to $571,321 based on the jury's finding that Swinerton was 69 percent at fault for Whitford's injury.

Judgment was entered. Both Swinerton and Whitford filed notices of appeal, Swinerton from the finding of liability and Whitford from the

[3]Wind was a hazard on the project because the building was still a shell, allowing the wind to blow through the floors or shoot up the elevator.
[4]Whitford dismissed Mitsui Fudosan as a defendant prior to the trial of the action.

reduction of the award for noneconomic loss. We modify the judgment and, as modified, affirm it.

## I.

■ Swinerton contends that the judgment must be reversed because of the Supreme Court's decision in *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721], which was rendered after the trial of this case. In *Privette*, the Supreme Court abrogated the peculiar risk doctrine insofar as it permitted the employees of an independent contractor to sue the employer of the contractor because such actions violate the exclusive remedy provision of the Workers' Compensation Act. Two subsequent cases have held that *Privette* should be applied retroactively. (*Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1669-1671 [29 Cal.Rptr.2d 11]; *Smith* v. *ACandS, Inc.* (1994) 31 Cal.App.4th 77, 94-97 [37 Cal.Rptr.2d 457].)

We agree that *Privette* should be applied retroactively to this case, but such retroactive application does not require reversal of the judgment because, as modified by the trial court, albeit for reasons unrelated to *Privette*, the judgment rests on a finding of Swinerton's negligence, not on any negligence of Martin Brothers imputed to Swinerton under the peculiar risk doctrine. In effect, the trial court accomplished by its remittitur what *Privette* would otherwise have required.

In *Privette*, the Supreme Court overruled a series of prior decisions that permitted the employee of an independent contractor to maintain an action against the landowner who had hired the contractor for injuries sustained by the employee due to the contractor's failure to take precautions against a special or peculiar risk associated with the work being done. (5 Cal.4th at p. 696.) As the court noted, the main rationale for imputing the contractor's negligence to the nonnegligent landowner under the peculiar risk doctrine was to insure that the worker would not have to depend upon the contractor's solvency if he or she was injured while doing inherently dangerous work. (*Id.* at p. 694.) Workers' compensation introduced a system under which the worker was protected from the contractor's insolvency, thus eliminating the rationale that supported allowing this application of the peculiar risk doctrine.

California was one of a minority of jurisdictions that permitted these kinds of actions. Most jurisdictions did not, reasoning that "the rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its

employees for on-the-job injuries, should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price." (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 699.) Further, "to allow an independent contractor's employees who incur work-related injuries compensable under the workers' compensation system to also seek damages under the doctrine of peculiar risk from the person who hired the contractor would give those employees an unwarranted windfall." (*Id.* at pp. 699-700.)

The Supreme Court also pointed out that the exclusivity of the workers' compensation remedy also precluded actions for indemnity by the employer of the contractor against the contractor. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 701.) Finally, the court observed, the workers' compensation system "achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Ibid.*) Accordingly, the court overruled *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708] and its progeny insofar as those cases extended the doctrine of peculiar risk to actions by the employees of an independent contractor against the contractor's employer. (*Privette* v. *Superior Court, supra,* at pp. 701-702.)

Two subsequent Court of Appeal decisions, from the Fifth and First Districts, have applied *Privette* retroactively. (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at pp. 1669-1671; *Smith* v. *ACandS, Inc., supra,* 31 Cal.App.4th at pp. 94-97.)

In *Owens,* the court noted that "[j]udicial decisions, particularly those in tort cases, are generally applied retroactively. [Citation.] However, the rule is not absolute and exceptions have been recognized based upon considerations of fairness, foreseeability and public policy. Among factors relevant to the analysis are the extent and reasonableness of reliance on the former rule, the purposes to be served by the new rule, and the effect of retroactivity on the administration of justice. [Citations.]" (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at pp. 1669-1670.)

Applying these factors, *Owens* concluded that retroactive application of *Privette* would not "deny an injured employee a day in court or deprive him or her entirely of a remedy. [Citation.] On the contrary, it will only foreclose recovery from a nonnegligent third party, thereby putting the employee of an independent contractor on the same footing as all other employees. The employee may still recover workers' compensation benefits as well as damages from a third party who contributed to his injuries through its own direct negligence." (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at p. 1670.) Also weighing in favor of retroactive application was the elimination of the inequities that resulted from "exempt[ing] a single class of workers—those employed by an independent contractor—from the statutorily mandated limits of workers' compensation" and from "the inability of an innocent third party held liable on a peculiar risk theory to be made whole by the party responsible for the injury. [Citation.]" (*Ibid.*)

The factors that weighed in favor of prospective application were reliance by litigants on the former rule and the unforeseeability of the change. (*Owens* v. *Giannetta-Heinrich Construction Co., supra,* 23 Cal.App.4th at p. 1670.) As to the final factor of the effect of retroactive application on the administration of justice, the court concluded that it would not be seriously disruptive because "most pending cases are likely to seek recovery based on theories of both direct and vicarious liability" and the use of special verdict forms "makes it possible to determine which of the theories was the basis for the jury's conclusion." (*Id.* at p. 1671.) On balance, then, the court found no "compelling reason to depart from the usual rule of retroactive application." (*Ibid.*; accord, *Smith* v. *ACandS, Inc., supra,* 31 Cal.App.4th at p. 95.)

We agree with *Owens* that *Privette* should be applied retroactively to this case, but reversal is not required. Whitford alleged causes of action for both negligence and peculiar risk, and, as the special verdict makes clear, the jury identified the greater cause of Whitford's injury to be Swinerton's negligence, not any negligence imputable to it under the peculiar risk doctrine. Therefore, retroactive application of *Privette* would require us at most to modify the judgment to strike 20 percent of the award of noneconomic loss reflecting the percentage of fault imputed to Swinerton under the peculiar risk doctrine.[5] Since this has already been done by the trial court, albeit on different grounds, we affirm the judgment unless reversible error has infected the finding of negligence. Not surprisingly, Swinerton argues that it has, in the form of instructional error. We turn to that claim in the unpublished portion of this opinion.

---

[5]Swinerton remains jointly liable for all economic losses. (Civ. Code, §§ 1431, 1431.2, subd. (b)(1); *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 600 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

## II.*

## A., B.

. . . . . . . . . . . . . . . . . . . . . . . . . .

As modified, the judgment is affirmed. Whitford to have his costs on appeal.

Epstein, J., and Vogel (C. S.), J., concurred.

A petition for a rehearing was denied May 25, 1995.

*See footnote, *ante*, page 1054.