[No. G016138. Fourth Dist., Div. Three. Aug. 29, 1997.]

RALPH REDFEATHER, Plaintiff and Appellant, v.
CHEVRON USA, INC., Defendant and Respondent.

## COUNSEL

Kaplan, Kenegos & Kadin, Jerry Kaplan, Joan Kenegos and J. Neil Gieleghem for Plaintiff and Appellant.

Thomas & Price and Christian E. Sanne for Defendant and Respondent.

## OPINION

**SILLS, P. J.**—In *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721], the Supreme Court held that a person who hires an independent contractor may not be held vicariously liable under the doctrine of peculiar risk for an on-the-job injury to an employee of that contractor. In this appeal, we hold that *Privette* applies where the contractor

has expressly agreed in writing to indemnify the person who hired the independent contractor against such liability.[1]

## FACTS

Chevron USA, Inc., contracted with the Pool Company to close down an oil well in Huntington Beach. The contract contained an express indemnity agreement requiring the Pool Company to indemnify Chevron against all liability for injury to an employee of the Pool Company.

Ralph Redfeather, an employee of the Pool Company, was injured in December 1989 when well pipe and down-hole equipment fell on him after coming loose from a hoisting mechanism. Redfeather sued Chevron and the supplier of certain grappling equipment, Blue Marlin Tool Company.

Trial began in April 1993. During the trial Redfeather settled with Blue Marlin for $75,000. On April 22, the jury returned a special verdict, which amounted to a defense verdict. Specifically, the jury found that Chevron did not control the portion of the premises where Redfeather was injured. Moreover, while the jury found that the work which Chevron hired the Pool Company to perform was likely to create a special risk of bodily harm unless special precautions were taken, *Chevron* did, indeed, exercise reasonable precautions. But the jury also found that the Pool Company did *not*.

Redfeather requested a mistrial on the theory that it was an error to ask the jury in the special verdict form whether Chevron took reasonable precautions, asserting there was no evidence showing Chevron did so. He further requested that the judgment be set aside, because whether or not Chevron took special precautions was irrelevant to his claim against the company, which was predicated on the doctrine of peculiar risk. Under the doctrine of peculiar risk, Redfeather maintained, Chevron was *vicariously* liability for the *Pool Company's* failure to take reasonable precautions. Accordingly, Redfeather also asked the court to enter a partial judgment in his favor because the jury had found that the Pool Company had indeed been negligent.

On June 10, 1993, the judge heard Redfeather's requests. She determined that the question asked of the jury was irrelevant and extraneous, and that

---

[1]This case is confined to just *vicarious* liability under the peculiar risk doctrine. As such, it is different from two cases now before the California Supreme Court, *Toland* v. *Sunland Housing Group, Inc.* (1995) 49 Cal.App.4th 212 [47 Cal.Rptr.2d 373] review granted March 14, 1996 (S050870), and *Voigts* v. *Brutoco Engineering & Construction Co.* (1996) 49 Cal.App.4th 354 [57 Cal.Rptr.2d 87] review granted December 11, 1996 (S056914) (further action deferred pending disposition of *Toland*). *Toland* and *Voigts* involve the viability of *direct* liability of a general contractor or developer to a subcontractor's employee.

Chevron should be liable based on what the jury did find—specifically, that the Pool Company was negligent. The judge ordered a new trial, scheduled for August 1993, to determine comparative negligence and damages.

Before the scheduled new trial could be held, however, the California Supreme Court handed down its decision in *Privette v. Superior Court, supra,* 5 Cal.4th 689. *Privette* held that the application of liability under the peculiar risk doctrine to a person who hires an independent contractor for the injuries of that contractor's employees conflicts with the exclusive remedy provisions of the workers' compensation laws. (See *id.* at p. 692.)

Redfeather brought a motion for an order declaring that the rule in *Privette not* be held retroactive. He lost. Citing *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059] and *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], the trial court determined that *Privette* was to be applied retroactively. Accordingly, judgment was entered in favor of Chevron. Redfeather now appeals from the judgment.

## DISCUSSION

### *Privette Applies Even Where There Is an Express Indemnity Agreement*

■ Redfeather contends that the rule in *Privette* should not apply where the party who hires an independent contractor has an express indemnity agreement with that contractor, even where the sole basis of liability against the hiring party is the peculiar risk doctrine. We disagree. Just because the hiring party may obtain indemnity from the independent contractor is no reason to carve out an exception to *Privette*.

The unfairness of imposing peculiar risk liability where indemnity is not available was only *one* reason behind the *Privette* decision. (See *Privette v. Superior Court, supra,* 5 Cal.4th at pp. 700-701.)[2] The overarching principle in the *Privette* decision, which the Supreme Court thought important enough to make the focus of the introduction to the opinion, was whether liability advances any "societal interest that is not already served by the workers' compensation system." (*Id.* at p. 692.) On that score, the presence of an express indemnity again makes no difference. As the *Privette* court declared after reviewing the reasons for the peculiar risk doctrine, ". . . in the case of on-the-job injury to an employee of an independent contractor, the

---

[2]Such recovery creates the anomaly that a nonnegligent party who hires an independent contractor pays more—much more—than the negligent independent contractor who caused the injury in the first place. (See 5 Cal.4th at p. 698.)

workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk . . . ." (*Id.* at p. 701.)

In conjunction with *Privette*'s point about societal interest, to make the person who hires an independent contractor liable for the workplace injuries of the latter's employees merely because of an indemnification agreement is to make both the hirer and the independent contractor pay for the *same* risk *twice* in the form of insurance premiums which must provide two kinds of coverage to accommodate the same risk. That is, the person who hires an independent contractor must not only pay a price which covers the independent contractor's *workers' compensation* insurance costs, but must also have to pay a cost which covers the independent contractor's *liability* insurance costs for the contractual liability the independent contractor will have assumed for the tort liability of the general contractor.[3] (See *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 253 [66 Cal.Rptr. 20, 437 P.2d 508] ["the insurance necessary to distribute the risk is properly a cost" of the person who employs the independent contractor]; see also *Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 699 [noting tentative draft of Restatement Second of Torts concluded that a hiring party's liability should not extend to an independent contractor's employees because cost of workers' compensation insurance is ultimately borne by defendant who hires independent contractor].)

A corollary of the same-risk-twice point is that varying a result otherwise dictated by the *Privette* decision because of the existence of express indemnification would denude subcontractors of the protection of the exclusive remedy provisions of the workers' compensation laws. General contractors require express indemnification clauses in almost all subcontracts in the construction industry. If general contractors were liable to subcontractors' employees for injuries caused by subcontractor negligence, subcontractors would have to pay twice for workplace injuries—once in workers' compensation premiums, and once in liability insurance premiums. (See *Anderson* v. *Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 242 [125 Cal.Rptr. 640] [". . . if Camay's negligence is imputed to Chancellor who in turn can seek indemnification from Camay, the result will be a circumvention of the well-established rule that an employee's remedy against his

---

[3]Liability insurance policies often include a contractual liability clause providing coverage for the *tort* liability of another which the policyholder incurs by way of contract. (See generally, *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 994-998 [216 Cal.Rptr. 796]; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 608 [155 Cal.Rptr. 870] ["The parties agree that the effect of this indorsement was to provide liability coverage to [the policyholder] in situations where [it] had by written contract assumed the liability of a third party."].)

employer for industrial injury is exclusively one for benefits under the workmen's compensation law"].)

Additionally, the *Privette* court pointed to the "unwarranted windfall" that accrues to employees who work for independent contractors which is "denied other workers." (5 Cal.4th at p. 700.) Here again the presence of express indemnification does not affect the basis of the high court's decision. Nothing in express indemnification makes the injured employee's tort recovery any less of a windfall. The fundamental fact remains that the employee is, after all, *an employee injured on the job*, and has a recovery in workers' compensation. Indeed, to allow vicarious liability in cases of express indemnity would only exacerbate arbitrariness. Not only would the existence of tort liability depend on whether the injured employee's employer was working as a contractor for another entity, but it would also depend on the fortuity of the employer's relationship with that entity.

Finally, the *Privette* court wrote of the need not to penalize persons who hire "experts to perform dangerous work rather than assigning such activity to their own inexperienced employees." (5 Cal.4th at p. 700.) Application of peculiar risk liability, however, creates an incentive to do dangerous work in-house. Express indemnity contracts only partially ameliorate this incentive. There is a huge difference between a workers' compensation claim and extensive multiparty tort litigation rife with cross-complaints for indemnity. The former is relatively inexpensive to administer and represents limited liability; the latter can be messy and unpredictable. The movement to a no-fault system to compensate worker injuries was, after all, a part of a historic compromise to spare employers exposure to the hazards of normal tort litigation in return for swift and certain recovery to injured workers. (See generally, *Angell* v. *Peterson Tractor, Inc.* (1994) 21 Cal.App.4th 981, 991-993 [26 Cal.Rptr.2d 541].)

*Privette Is Retroactive*

Redfeather also argues that *Privette*, even if otherwise applicable, should not be held retroactive.

Court of Appeal decisions to date have uniformly held *Privette is* retroactive. (See *Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1669-1671 [29 Cal.Rptr.2d 11]; *Smith* v. *ACandS, Inc.* (1994) 31 Cal.App.4th 77, 94-95 [37 Cal.Rptr.2d 457]; *Whitford* v. *Swinerton & Walberg Co.* (1995) 34 Cal.App.4th 1054, 1058-1060 [40 Cal.Rptr.2d 688].) We need not reinvent the work done by these courts. We only add that *Privette* did not disrupt any *legitimate* expectations. It merely conformed the

law to the standard assumption that on-the-job injuries are a matter for the workers' compensation system. The pre-*Privette* opportunity to sue the hirer of an independent contractor for injuries caused by one's employer's negligence was, to put it in the colloquial, a "freebie" born of the fact that the Supreme Court had not yet confronted the fundamental contradiction between that opportunity and the workers' compensation system.

## CONCLUSION

The judgment is affirmed.

Wallin, J., and Rylaarsdam, J., concurred.