[No. B002715. Second Dist., Div. Two. Apr. 13, 1984.]

LAS VIRGENES MUNICIPAL WATER DISTRICT, Petitioner, v. ANN DORGELO, as Secretary, etc., Respondent.

**COUNSEL**

Stradling, Yocca, Carlson & Rauth, Fritz R. Stradling and Robert J. Whalen for Petitioner.

Redwine & Sherrill, Maurice C. Sherrill, Gerald W. Egans, Carl Boronkay, Warren J. Abbott and James W. Mountain as Amici Curiae on behalf of Petitioner.

Helm, Budinger & Lemieux and Wayne K. Lemieux for Respondent.

**OPINION**

**ROTH, P. J.—** The question in this original mandamus proceeding is whether the remaining portion of a water district's bonds, the initial

issuance of which was statutorily authorized in 1964 by an "absence of landowner protest" plan, may now be issued consistently with the mandates of Proposition 13. The 1964 authorization permitted petitioner water district to issue $3.2 million in bonds. Prior to the passage of Proposition 13 in 1978, it had issued $1.7 million of those bonds. The district now seeks to issue the remaining $1.5 million of those previously authorized but heretofore unissued bonds. Because we find the original authorization in 1964 of the issuance of all of the bonds was a prior "indebtedness approved by the voters," we find no constitutional impropriety in permitting the present issuance of the remainder of the bonds.

The facts are not contested. Petitioner water district was organized in 1958 under the Municipal Water District Law of 1911. (Wat. Code, § 71000 et seq.) Respondent is the district's secretary. The district formed three improvement districts, designated Sanitation Improvement Districts U-1, U-2, and U-3, pursuant to Water Code section 71920 et seq., now repealed in part. Less than 12 voters resided in each improvement district at the time of formation, i. e., each was "uninhabited" as defined in Water Code section 71921 and as a consequence authority to form the improvement districts and issue bonds for construction of facilities was granted when a majority of those owning land within the proposed districts' borders failed to protest. (Former Wat. Code, § 71931.)

In the case of U-2, petitioner district adopted a resolution of intention on March 9, 1964. The resolution was published in a general circulation newspaper and copies were mailed to all persons owning land in the proposed uninhabited improvement district. On April 13, 1964, the district, no written protests having been received from landowners, authorized the issuance of $3.2 million in general obligation bonds.

In 1974 the Legislature amended the Municipal Water District Law which permitted the lack of protest procedure previously used, and substituted therefor an election procedure which required a majority of votes to favor formation of the improvement district and the issuance of bonds. (See Wat. Code, §§ 71930—71934.)

In June 1978, the people of California approved Proposition 13, adding article XIII A to the Constitution. Section 1, subdivision (a) provides that "[t]he maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property." Subdivision (b) states: "The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective."

Prior to July 1, 1978, the effective date of article XIII A, U-2 had issued $1.7 million in bonds. That is, U-2 has $1.5 million in authorized but unissued bonds. The district now desires to issue these remaining authorized bonds, but the secretary has refused on the grounds that to do so would violate article XIII A, section 1, subdivision (a). The bonds by their nature require the pledge of an unrestricted amount of ad valorem taxes. Hence they cannot be issued unless they qualify under subdivision (b)'s exception to the rule of subdivision (a). The secretary takes the position that the bonds do not qualify as they were not "approved" by "the voters" in that (1) authorization to issue the bonds as a result of an absence of landowner protest is not the equivalent of approval; and (2) in any event, the "voters," as defined by the Election Code, did not pass upon the issue. District requests this court to issue a writ of mandate against the secretary.

The factual question of the capacity of governmental agencies to continue financing public works begun as long as two decades ago is a matter of first impression. Our assumption of original appellate jurisdiction is we think appropriate. (See *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 51 [184 Cal.Rptr. 713, 648 P.2d 735]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 219 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Metropolitan Water District* v. *Dorff* (1983) 138 Cal.App.3d 388, 391 [188 Cal.Rptr. 169]; *County of Placer* v. *Corin* (1980) 113 Cal.App.3d 443, 445-446 [170 Cal.Rptr. 232]); *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974-978 [156 Cal.Rptr. 777]; see also § 10, art. VI of the Cal. Const.; Code Civ. Proc., § 1085; and Cal. Rules of Court, rule 56.)

The district and the secretary urge on us diverse versions of what the people of California intended when they enacted article XIII A. The secretary, looking to section 1, subdivision (a), argues that Californians were principally concerned with reducing local government's reliance on ad valorem property taxes and concludes the phrase "approved by the voters" should be narrowly construed. The district concentrates on section 1, subdivision (b), and contends that its "focus on voter approval implies a concern that irrevocable, long-term obligations, solemnly approved by local electorates and entered on faith in taxing powers then available, not be frustrated . . . ." (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 328 [182 Cal.Rptr. 506, 644 P.2d 192].) It argues that "approved by the voters" deserves a broad interpretation.

It is clear to us the citizens of California desired property tax relief but we are confident they had no desire either to cripple ongoing governmental projects or to disrupt prior governmental commitments. (*Carman* v. *Alvord, supra,* 31 Cal.3d at pp. 327-328.) Thus, one Court of Appeal has concluded

that ". . . because the obvious purpose of Proposition 13 was to limit drastically the power of local entities to levy ad valorem taxes, it necessarily follows that any exceptions written into the constitutional amendment in mitigation of [its] new restriction should be broadly construed in favor of the objectives of that exception." (*Metropolitan Water Dist.* v. *Dorff, supra,* 138 Cal.App.3d at p. 393.)

The secretary argues that the procedure authorized by former Water Code section 71931 does not constitute "approval" as that term is used in article XIII A, section 1, subdivision (b). The core of her argument is that "lack of disapproval" is not the same as "approval," and that only positive approval will satisfy subdivision (b). We do not agree. Declining to take affirmative action to voice disapproval of proposed governmental action is an action which potentially involves making a decision as does deciding to commit an act to register a complaint to the proposed action. The difference lies solely in the degree of active involvement. The difference is in degree only; either the lack of activity or affirmative activity is a decisionmaking process.

There can be no doubt that the landowners "consented" to the bonds by not registering their disapproval. Is there any important distinction between "consent" and "approval" in this context? We think not. ■ To approve is "to confirm, ratify, sanction or *consent* to some act or thing done by another." (Black's Law Dict. (5th ed. 1979) p. 94.) (Italics added.)

■ The relevance to this proceeding of the 1974 amendments to the Water Code is unclear. It is true that now there must be an election with a majority vote of approval requisite to forming an improvement district and issuing bonds. But neither party has cited, and our independent research has failed to disclose, any legislative history on why those changes were made. Nevertheless, we are satisfied that now requiring a greater degree of involvement in the proceedings leading to the authorization of bonds does not itself rob the prior procedure of its character as an "approval" process.

The secretary cites *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942 [104 Cal.Rptr. 297, 501 P.2d 537] and *County of Riverside* v. *Whitlock* (1972) 22 Cal.App.3d 863 [104 Cal.Rptr. 297, 501 P.2d 537] to support her position. However, those cases merely support the view that majority protest mechanisms do not count as *elections.* "Approval," not an "election," is mandated by section 1, subdivision (b). "Approval" is clearly a more inclusive notion than "election." The drafters of Proposition 13 indicated that they understood the difference. Section 4 of article XIII A provides that special taxes may be imposed "by a two-thirds vote of the qualified electors" of a district. The drafters knew how to require an election

when they desired to do so. Thus, we apply the rule of construction that when different terms are used it is presumed that different meanings are intended. (*Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422].)

We conclude that "approved" as used in article XIII A, section 1, subdivision (b) encompasses the majority protest procedure authorized by former Water Code section 71931.

The secretary further argues that the landowners approving the bonds were not "voters" as that term is used in section 1, subdivision (b). She reasons that Elections Code section 18 defines "voter" as "any elector who is registered under the provisions of this code." "Elector" is in turn defined in Elections Code section 17 as "any person who is a United States citizen, 18 years of age or over and a resident of an election precinct at least 29 days prior to an election." The landowners were not necessarily residents of the district to be formed. They were therefore not "electors," and therefore not "voters."

We find secretary's argument unpersuasive. Water Code section 71931 now states: "Voter means a person who is a holder of title." This is a specific definition of "voter" for establishment of an uninhabited improvement district and incurring the bonded indebtedness. The Elections Code's definitions are general. ■ A specific statute controls a general one, regardless of dates of passage. (Civ. Code, § 3534; *Ward* v. *Chandler-Sherman Corp.* (1946) 76 Cal.App.2d 373, 378 [172 Cal.Rptr. 900].) ■ We therefore conclude that the landowners, as "holders of title," are "voters" within the meaning of article XIII A, section 1, subdivision (b).

The bonds which the district seeks to issue are a prior indebtedness approved by the voters. As such they stand within the coverage of article XIII A, section 1, subdivision (b).

Let a peremptory writ of mandate issue as prayed.

Beach, J., and Gates, J., concurred.