[Nos. G008422, G008703. Fourth Dist., Div. Three. Aug. 22, 1990.]

RRLH, INC., Plaintiff and Appellant, v.
SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

1604

**COUNSEL**

Stradling, Yocca, Carlson & Rauth, Thomas A. Pistone and Julie M. McCoy for Plaintiff and Appellant.

Rourke & Woodruff, Thomas L. Woodruff and Thomas F. Nixon for Defendants and Appellants.

**OPINION**

WALLIN, J.—Plaintiff RRLH, Inc. (referred to by the parties as Rossmoor), appeals a judgment, after a court trial on stipulated facts, denying relief in its suit for refund of school impact fees paid under protest to defendant Saddleback Valley Unified School District. Saddleback cross-appeals from an order denying its motion to vacate the judgment. We affirm the judgment and dismiss Saddleback's appeal.

On October 28, 1986, Saddleback adopted resolution No. 23:86-87, pursuant to Government Code sections 53080 and 65995, subdivision (b)(3),[1] authorizing the levy of a $1.50 per square foot fee on new residential development and a 25 cents per square foot fee on new commercial and industrial development within Saddleback's boundaries. The fees were imposed in connection with Rossmoor's development of the "Regency," a residential apartment complex for senior citizens.

Saddleback imposed fees at the rate of $1.50 per square foot in the total amount of $300,993, and Rossmoor was required to pay the fees prior to obtaining a building permit for the project. Rossmoor tendered payment in full under protest pursuant to former section 65913.5 (renumbered § 66008 and amended by Stats. 1988, ch. 418, § 4) on May 11, 1987.

Effective March 14, 1988, section 65995.1 was added to the Government Code and provided that school impact fees "as to any development project for the construction of senior citizen housing" were restricted to the rate for commercial or industrial development, that is, 25 cents per square foot.

In its complaint Rossmoor challenged, among other things, the timing of the collection of the fees by Saddleback. Rossmoor contends it should not have been required to pay the school impact fees prior to obtaining a building permit for the project. Rather, under the provisions of former section 53077.5 (renumbered § 66007 and amended by Stats. 1988, ch. 418, § 3), the fees should not have been assessed "until the date of the final inspection, or the date the certificate of occupancy is issued, whichever occurs last . . . ." If Rossmoor is right and the collection of school impact fees was governed by former section 53077.5 rather than section 53080, the fees would not have been payable until October 1988, at which time section 65995.1 would have been applicable. Because the Regency was constructed as senior citizen housing, the applicable school impact fee rate would have been 25 cents per square foot rather than the $1.50 per square foot levied by Saddleback.

■ ■ ■ ■ Rossmoor filed its complaint for declaratory relief, mandatory injunction and conversion on December 4, 1987.[2] Rossmoor

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] In its answer Saddleback raised the statute of limitations as an affirmative defense claiming Rossmoor's action was barred by the provisions of section 66008, subdivision (d), which requires payment of the fee and filing of a written protest within 90 days after the date of the imposition of the fees, and also provides an action challenging the fees must be filed "within 180 days after the date of the imposition" of the fees. Saddleback did not assert this defense at trial; the trial court made no factual findings based on it; and Saddleback does not raise it here. It does appear, however, that Rossmoor's suit was not timely filed. (*North State Devel-*

originally challenged imposition of the school fees on several grounds, including: (1) the fees amounted to an unauthorized tax; and (2) the Regency was a commercial, rather than a residential, development and fees should have been assessed at the lower rate. At the time of trial, however, those claims were dropped and Rossmoor's only contention was that the fees were collected too early, because they were not due and payable until October 1988 when the senior citizen development rate was in effect.

The matter was submitted on stipulated facts, certain declarations and exhibits. In addition the court considered Saddleback's motion for summary judgment. The trial court issued a minute order on April 3, 1989, which stated, "The Court having considered all the evidence, pleadings and Points and Authorities submitted by both sides in this case, hereby grants [Saddleback's] Motion for Summary Judgment." A proposed order granting judgment and a judgment were signed and filed by the court on April 13, 1989.

On the same date Rossmoor filed a notice that it would appear on April 21 to request clarification of the court's April 3 minute order.[3] Counsel for Saddleback did not appear on April 21, and a reporter's transcript of that hearing is not part of the record. On July 7 the trial court signed and filed an amended order granting judgment for Saddleback and on July 12 an amended judgment was entered in favor of Saddleback. On July 19 Rossmoor filed its notice of appeal from the amended judgment. On July 27 Saddleback filed a motion to vacate the amended order for judgment and the amended judgment claiming they were void. The trial court denied Saddleback's motion on the ground that Rossmoor's appeal of the amended judgment removed jurisdiction from the trial court. Saddleback appeals the denial of its motion to vacate, and the two appeals have been consolidated here.

Rossmoor contends Saddleback acted prematurely in requiring payment of the school fees prior to issuance of the building permit for the Regency

---

opment Co. v. Pittsburg Unified School Dist. (1990) 220 Cal.App.3d 1418, 1423-1425 [270 Cal.Rptr. 166]; cf. Balch Enterprises, Inc. v. New Haven United School Dist. (1990) 219 Cal.App.3d 783, 787-790 [219 Cal.App.3d 783].) The statute of limitations is a defense that can be waived. While Saddleback raised the defense in its pleadings, the trial of this matter proceeded on the theory the statute of limitations was not in issue. That being the "theory of the trial," the issue is foreclosed on appeal. (See Hilliard v. A. H. Robins Co. (1983) 148 Cal.App.3d 374, 392 [196 Cal.Rptr. 117]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 316-318, pp. 327-330.)

[3] It is understandable that Rossmoor might seek clarification of the order granting Saddleback's motion for summary judgment since that motion did not encompass the one issue presented at trial, that is, whether the timing of payment of school impact fees imposed by Saddleback was governed by section 53080 or section 66007. Saddleback's motion for summary judgment sought resolution of the several issues raised in Rossmoor's complaint which were apparently abandoned at the time of trial.

because the fees were not due until the project was completed as provided in former section 53077.5. Former section 53077.5, subdivision (a) provided: "Except as otherwise provided in subdivision (b), any local agency which imposes any fees or charges on a residential development for the construction of public improvements or facilities shall not require the payment of those fees or charges, notwithstanding any other provision of law, until the date of the final inspection, or the date the certificate of occupancy is issued, whichever occurs last . . . ."

In its amended order for judgment the trial court found that the payment of school impact fees is governed by section 53080 and that "[Saddleback] properly levied and collected [the] school impact fees from [Rossmoor] in May, 1987, at the time of issuance of the building permit for the Rossmoor Regency." Section 53080, subdivision (a)(1) provides in pertinent part: "The governing board of any school district is authorized to levy a fee, . . . against any development project within the boundaries of the district, for the purpose of funding the construction or reconstruction of school facilities, subject to any limitations set forth in Chapter 4.9 (commencing with Section 65995) of Division 1 of Title 7.[4] . . . [¶] (b) No city or county, whether general law or chartered, may issue a building permit for any development absent certification by the appropriate school district of compliance by that development project with any fee, . . . levied by the governing board of that school district pursuant to subdivision (a) . . . ."

Rossmoor asserts these statutes are conflicting and we should resolve any ambiguity in favor of former section 53077.5, subdivision (a) because: (1) that section states explicitly it is to apply "notwithstanding any other provision of law"; (2) the legislative counsel issued an opinion in 1986 concluding that a school district could not require payment of school impact fees until the date of final inspection with respect to residential or commercial development, or the date the certificate of occupancy is issued; and (3) accepted principles of statutory construction dictate that former section 53077.5 should control. We disagree and affirm the trial court judgment.

In section 65995, enacted at the same time as section 53080, the Legislature forbade local agencies from imposing *any* fees or charges against a development project for the construction or reconstruction of school facilities. That function was specifically vested in the governing board of school districts as provided in section 53080. (See *California Bldg. Industry Assn. v. Governing Bd.* (1988) 206 Cal.App.3d 212, 224 [253 Cal.Rptr. 497].)

---

[4] Chapter 4.9 limits fees to $1.50 per square foot on residential construction and 25 cents per square foot on commercial construction, senior citizen housing, and mobilehome parks limited to older persons.

Section 65995 makes clear that the financing of school facilities by development fees is a matter of statewide concern and that the state has preempted the field: "[T]he Legislature hereby occupies the subject matter of mandatory development fees and other development requirements for school facilities finance to the exclusion of all local measures on the subject." (§ 65995, subd. (e).) Section 65995 is part of chapter 4.9 which is concerned exclusively with limits on imposition of school fees by school districts under section 53080.

Section 53080, subdivision (b) conditions a city or county's power to issue a building permit for any development upon certification by the applicable school district that any fees imposed under subdivision (a) of section 53080 have been paid. Former section 53077.5, on the other hand, governed local agencies in general, and clearly provided that fees imposed by such agencies on residential developments for the construction of public facilities could not be collected until the date of either the final inspection or issuance of the certificate of occupancy, whichever occurs last.[5]

Saddleback argues it does not fall within the designation "local agency." At the time in question, former section 53077.5, provided in subdivision (c), " 'Local agency,' as used in this section, means a county, city, or city and county, whether general law or chartered, or district. 'District' means an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries." Saddleback claims school districts may be agencies of the state, but they are not formed pursuant to general law or special act for the "local performance of governmental or proprietary functions." Instead school districts are agencies of the state created by the Legislature under the authority of the Constitution for the local operation of the state school system. (See *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574].)

Rossmoor points out that a 1986 legislative counsel's opinion states, "[I]t is our opinion that a school district is a 'district' under the definition set forth above and, accordingly, constitutes a 'local agency' for purposes of [former] Section 53077.6." We think the legislative counsel's analysis, which is unsupported by any applicable authority, is faulty.

Section 56036 defines district or special district in the same manner as did section 53077.5, and school districts are specifically excluded from the

---

[5] Former section 53077.5 subdivision (a) uses the mandatory word "shall" and contains the language, "notwithstanding any other provision of law." However, subdivision (b) of the same section provided that under certain specified conditions a local agency "may require the payment of those fees or charges at an earlier time . . . ."

definition. That section provides in part: "'District' or 'special district' includes a county service area, but excludes all of the following: . . . [¶] (4) A school district or a community college district."

We acknowledge the Legislature has not always been consistent in its definition of local agency or district, sometimes excluding and sometimes including school districts. (See § 66000.) Accordingly, we must look to the general principles of statutory construction to harmonize the seemingly conflicting provisions of section 53080 and former section 53077.5.

■ Preeminent among statutory construction principles is the requirement that courts must ascertain the intent of the Legislature. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *De Young* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].) Further, legislation should be given a reasonable, commonsense interpretation consistent with the apparent purpose of the Legislature. In addition, legislation should be interpreted so as to give significance to every word, phrase and sentence of an act. And all parts of the legislation must be harmonized by considering the questioned parts in the context of the statutory framework taken as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 992 [235 Cal.Rptr. 732].)

The Legislature specifically expressed its intent in enacting section 53080 in 1986. The section was a "response to the crisis of overcrowded school facilities caused by substantial development and population growth" in the state. (*North State Development Co.* v. *Pittsburgh Unified School Dist., supra*, 220 Cal.App.3d 1418, 1421.)[6] As Saddleback points out, there is a logical reason for requiring early payment of school impact fees, that is, construction of school facilities must keep pace with construction of new

---

[6] Section 7 of Statutes 1986, chapter 887, provides: "The Legislature finds and declares as follows: [¶] (a) Many areas of this state are experiencing substantial development and population growth, resulting in serious overcrowding in school facilities. [¶] (b) Continued economic development requires the availability of the school facilities needed to educate the state's young citizens. [¶] (c) In growing areas of this state, the lack of availability of the public revenues needed to construct school facilities is a serious problem, undermining both the education of the state's children and the continued economic prosperity of California. [¶] (d) For these reasons, a comprehensive school facilities finance program based upon a partnership of state and local governments and the private sector is required to ensure the availability of school facilities to serve the population growth generated by new development. [¶] (e) The Legislature therefore finds that the levying of appropriate fees by school district governing boards at the rates authorized by this act is a reasonable method of financing the expansion and construction of school facilities resulting from new economic development within the district."

residential developments so that new schools will be ready and available when needed by new homeowners.[7]

It is also apparent that an interpretation favoring former section 53077.5 would render subdivision (b) of section 53080 somewhat meaningless, or at least lead to an absurd result. Cities or counties could not issue building permits without certification that school impact fees had been paid. Accordingly, projects would never be built, and fees, which could only be collected on completion, would never be collected.

Rossmoor asserts this confusion was corrected when section 66007, which retained subdivisions (a) and (b) of former section 53077.5, added subdivision (c) which provides in pertinent part, "If any fee or charge specified in subdivision (a) is not fully paid prior to issuance of a building permit for construction of any portion of the residential development encumbered thereby, the local agency issuing the building permit may require the property owner . . . as a condition of issuance of the building permit, to execute a contract to pay the fee or charge . . . within the time specified in subdivision (a)."

But we do not see how the enactment of this subdivision furthers Rossmoor's argument that collection of school impact fees were governed by former section 53077.5. Subdivision (c) of section 66007 merely gives local agencies another mechanism for enforcing collection of fees on residential developments.

More significant in our view is the addition of subdivision (c) to section 53080 and the enactment of section 53080.1. Pertinent here is subdivision (c) of section 53080.1 which provides, "Upon adopting or increasing a fee, . . . pursuant to subdivision (a) or (b), the school district shall transmit a copy of the resolution to each city and each county in which the district is situated, accompanied by all relevant supporting documentation and a map clearly indicating the boundaries of the area subject to the fee . . . . The school district governing board shall specify, pursuant to that notification, *whether or not the collection of the fee or other charge is subject to the restriction set forth in subdivision (a) of Section 66007.*" (Italics added.) Subdivision (c) was also added to section 53080 and provides: "If, pursuant to subdivision (c) of Section 53080.1, the governing board specifies that the fee, . . . levied under subdivision (a) is subject to the restriction set forth in subdivision (a) of Section 66007, the restriction set forth in subdivision (b)

---

[7] We recognize the same may be said for other public facilities being built by local agencies, and such early funding is achievable under the provisions of subdivision (b) of section 66007, and was available under subdivision (b) of former section 53077.5.

of this section does not apply. In that event, however, no city or county whether general law or chartered, may conduct a final inspection or issue a certificate of occupancy, whichever is later, for any residential development project absent certification by the appropriate school district of compliance by that development project with any fee, . . . levied by the governing board of that school district pursuant to subdivision (a)."

██ It is obvious the Legislature would not have given school districts the option of adopting the limits on collecting fees available under section 66007 if they were governed by that section in the first place. As was said in *Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289], "As a general proposition the courts have held that ' "The very fact that the prior law is amended demonstrates the intent to change the pre-existing law . . . ." ' [Citations.]" (See § 9605; *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 506 [113 Cal.Rptr. 539].)

██ In addition, a specific provision relating to a particular subject will prevail over a general provision even where the general statute is broad enough to encompass the subject of the particular legislation. (Civ. Code, § 3534; *Las Virgenes Mun. Wat. Dist.* v. *Dorgelo* (1984) 154 Cal.App.3d 481, 486 [201 Cal.Rptr. 266]; *Cavalier Acres, Inc.* v. *San Simeon Acres Community Services Dist.* (1984) 151 Cal.App.3d 798, 802 [199 Cal.Rptr. 4].) Section 53080, the specific statute, takes precedence over the general statute, former section 53077.5. Under the circumstances, the trial court properly decided Saddleback did not collect the school impact fees prematurely.

Since we affirm the judgment, Saddleback's cross-appeal is moot and is dismissed. The judgment is affirmed.

Moore, Acting P. J., and Crosby, J., concurred.