Filed 12/16/20  Patkins v. Piantini CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| DAVID PATKINS, | |
| Plaintiff and Appellant, | E073358 |
| v. | (Super.Ct.No. CIVDS1504254) |
| REBECCA PIANTINI, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed in part; reversed in part.

David C. Patkins, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Plaintiff and appellant, David C. Patkins (Plaintiff), requested entry of a default judgment against defendant and respondent, Rebecca Piantini, M.D. (Defendant).  The trial court found (1) Plaintiff's causes of action were barred by the statute of limitations; and (2) Plaintiff failed to demonstrate liability.  The trial court denied Plaintiff's request for entry of a default judgment and dismissed the case with prejudice.

1

Plaintiff raises three issues on appeal.  First, Plaintiff contends the trial court erred by sua sponte raising the statute of limitations.  Second, Plaintiff asserts the trial court erred by requiring him to establish liability when liability was established by Defendant's default.  Third, Plaintiff contends the trial court erred by dismissing the case without notice.  We affirm in part and reverse in part.[1]

## FACTUAL AND PROCEDURAL HISTORY

A.     <u>CRIMINAL CASE</u>

Plaintiff's six-month old son (the victim) suffered skull fractures and a brain injury and was transported to the hospital, by ambulance, on April 28, 2001.  The victim died in the hospital on May 1, 2001.  (*People v. Patkins* (Nov. 19, 2003, E032757) [nonpub. opn.] [2003 Cal. App. Unpub. LEXIS 10853, *2, 4-6].)[2]  Defendant worked as

---

[1] Plaintiff attached exhibits to his brief in lieu of oral argument (ILOA Brief).  A party may attach exhibits to an appellate brief if the exhibits are already in the appellate record and do not exceed 10 pages.  (Cal. Rules of Court, rule 8.204(d).)  Plaintiff does not explain if the exhibits attached to his ILOA Brief are also part of the record of appeal.  Additionally, Plaintiff's exhibits are approximately 90 pages in length.  Accordingly, we do not consider the exhibits attached to Plaintiff's ILOA Brief.  (Cal. Rules of Court, rule 8.204(d).)

Also, in the ILOA Brief, Plaintiff requests the appointment of counsel. We deny Plaintiff's request.  (*County of Fresno v. Superior Court* (1978) 82 Cal.App.3d 191, 195 ["[O]ur independent review of the authorities in this and other states has failed to turn up a single case wherein a court has held that an indigent civil litigant is entitled to court-appointed counsel at public expense."].)

[2] On our own motion, we take judicial notice of our unpublished opinion in *People v. Patkins* (Nov. 19, 2003, E032757) [nonpub. opn.] [2003 Cal. App. Unpub. LEXIS 10853].  (Evid. Code, § 452, subd. (d); see also *Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10 [an unpublished case may be cited for factual background purposes].)  In the record for the instant appeal, Plaintiff provided an incomplete copy of our opinion in his criminal case.

2

a forensic pediatrician.  Defendant wrote a medical report about the victim that included the victim's medical history, observations of the victim, and her opinion that the victim's death was caused by abusive head trauma.  A jury found defendant guilty of the second-degree murder of the victim (Pen. Code, § 187), child abuse resulting in death (Pen. Code, § 273a), and possession of brass knuckles (Pen. Code, § 12020, subd. (a)).  In the criminal case, the trial court sentenced defendant to prison for a term of 59 years to life.  In 2003, this court affirmed the judgment in defendant's criminal case.  (*People v. Patkins*, *supra*, [2003 Cal. App. Unpub. LEXIS 10853, *1-2, 29].)

B.    PRIOR APPEAL IN THE INSTANT CASE

In March 2015, Plaintiff sued Defendant for (1) fraud; (2) intentional infliction of emotional distress; and (3) violations of the Business and Professions Code (Bus. & Prof. Code, §§ 2230.5, subd. (c), 2234, subds. (d) & (e), 2262).  Plaintiff alleged that Defendant attended the victim's autopsy and, by means of fraud, affected the San Bernardino County deputy medical examiner's conclusion concerning the victim's cause of death.  Plaintiff asserted the autopsy findings did not support abusive head trauma as the victim's cause of death; however, because of Defendant's fraud, abusive head trauma was listed as the victim's cause of death.  Plaintiff alleged the statute of limitations had been tolled because, since 2003, Plaintiff had been diligently trying to locate missing medical records by making demands upon various agencies.  In 2014, Plaintiff gained access to medical books and was able to discover Defendant's alleged fraud.

3

In July 2015, at Plaintiff's request, a trial court clerk entered Defendant's default. In September 2015, the trial court denied Plaintiff's request for a default judgment and dismissed Plaintiff's case. Plaintiff appealed. In September 2017, this court affirmed the denial of the request for a default judgment but reversed the dismissal of the case. The denial of the request was affirmed because Plaintiff failed to allege causation. We explained that Plaintiff failed to allege that he was convicted of murder or incarcerated, and therefore, there was no causation between Defendant's alleged acts and Plaintiff's alleged harm. The dismissal was reversed because there was no notice given to Plaintiff that the case might be dismissed, e.g., by issuing an order to show cause (OSC) why the case should not be dismissed.

C.     EVENTS OCCURRING AFTER ISSUANCE OF THE REMITTITUR

On December 5, 2017, the trial court set an OSC re: dismissal returnable on April 17, 2018. On December 28, Plaintiff filed a First Amended Complaint (FAC). The FAC included causes of action for fraud/misrepresentation, fraud/concealment, and intentional infliction of emotional distress. Plaintiff alleged that he became aware of Defendant's fraud in 2014 when he gained access to medical books. Plaintiff alleged the victim's head trauma occurred when Plaintiff accidentally fell on the stairs while holding the victim. The fall caused the victim's head to strike the edge of a step. Plaintiff alleged that Defendant falsely opined that the victim had been shaken and died of abusive head trauma, in contradiction to the autopsy findings. Plaintiff attached a reporter's transcript to his FAC, which reflects a deputy medical examiner's testimony indicating the victim may have been shaken but that his brain injury likely occurred

4

from the same blunt force trauma that caused him to suffer a skull fracture. Plaintiff asserted that as a result of Defendant's acts, Plaintiff suffered a murder conviction and a loss of liberty. Plaintiff prayed for general damages of $250,000 or the maximum allowed by law and punitive damages in an unspecified amount.

On March 23, 2018, a trial court clerk entered Defendant's default. On April 17, the trial court continued the hearing on the OSC re: dismissal to June 18. On May 18, the trial court rejected Plaintiff's default judgment packet because Defendant had not been properly served with the summons and complaint. Defendant's default was vacated.

Plaintiff filed an ex parte motion for clarification of the failure to properly serve Defendant. The court held a hearing on the motion. Plaintiff was not present. The trial court read into the record Code of Civil Procedure section 417.20, which concerns out-of-state service, and then ordered the court reporter to prepare a transcript and send it to Plaintiff. The court continued the matter to allow Plaintiff to file further documents in support of his ex parte motion.

Plaintiff appeared via telephone at the continued hearing. The trial court again found service on Defendant was not proper. The court directed Plaintiff to Code of Civil Procedure section 415.30, which concerns service by mail. On August 28, 2018, the trial court rejected Plaintiff's default judgment packet because the service of the summons and complaint did not comply with Code of Civil Procedure section 415.40, in that Defendant did not sign the return receipt.

On October 10, 2018, Plaintiff requested the entry of Defendant's default, and a court clerk entered the default. Plaintiff filed the declaration of Hector Sanchez along with a brief concerning service of process. On December 19, 2018, the trial court held a hearing on the status of service in the case. The trial court "deemed service of the summons and complaint valid as of today" and continued the matter to allow Plaintiff to submit a default judgment packet. On April 18, 2019, the trial court set a default prove-up hearing for July 26.

On July 26, 2019, Plaintiff attended the hearing via Skype. The trial court found "[P]laintiff is attempting to give expert medical testimony in order to contradict [D]efendant's testimony during [Plaintiff's] criminal trial, which is inappropriate as [he] is not qualified to do so." Further, the trial court found "from the evidence presented, the testimony of [P]laintiff, and documents filed, that the alleged injury to [the victim] occurred in April of 2001. The Court [found] that plaintiff complained of perjury by [Defendant] to the Medical Board and the Board responded in 2003. In 2006 [Plaintiff] made another complaint which was also responded to. The Court [found] that plaintiff was on notice of the allegations as late as 2006, but did not file his complaint until March 19, 2015. [¶] The Court [found] no basis to pursue the case based upon expiration of the statute of limitations. [¶] The Court [found] nothing has been established that would suggest the statute of limitations has been tolled for any purpose."

Further, the court found that "[P]laintiff provided no clear and convincing evidence that [Defendant] did anything wrong, or even by preponderance of the evidence if considered in a general civil standard, and there is no expert testimony that she did anything wrong." The trial court denied Plaintiff's request for a default judgment and dismissed the case with prejudice.

## DISCUSSION

### A.   STATUTE OF LIMITATIONS

Plaintiff contends the trial court erred by sua sponte raising the statute of limitations because (1) the trial court was advocating as Defendant's counsel; and (2) the court disregarded the allegations in the FAC pertaining to the tolling of the statute of limitations.

"The statute of limitations is a defense that can be waived." (*RRLH, Inc. v. Saddleback Valley Unified School Dist.* (1990) 222 Cal.App.3d 1602, 1605, fn. 2.) That means the statute of limitations "is a 'personal privilege' to be asserted or waived at the option of the one entitled to assert it[;] the statute must be affirmatively invoked by him by appropriate pleading or its benefits to him are waived." (*Bell v. Travelers Indem. Co. of Hartford, Conn.* (1963) 213 Cal.App.2d 541, 547.) If a party wants to raise a statute of limitations defense, it should be raised by demurrer or in an answer. (*Berendsen v. McIver* (1954) 126 Cal.App.2d 347, 351.) "The essence of the rule requiring the statute [of limitations] to be pleaded is to apprise plaintiff that defendant intends to rely upon that defense." (*Hall v. Chamberlain* (1948) 31 Cal.2d 673, 680.)

7

It was not the trial court's role to raise a statute of limitations defense on behalf of Defendant. In the instant case, Defendant may have made a tactical decision to not answer the FAC. (See *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281-282 (*Kim*) [defaulting can be a tactical move].) Defendant's decision not to answer the FAC or her failure to answer the FAC does not give the trial court the authority to raise a defense that must be affirmatively and personally raised by Defendant. (*O'Neil v. Spillane* (1975) 45 Cal.App.3d 147, 156 ["It is blackletter law that the defense of the statute of limitations is a personal privilege which must be affirmatively invoked in the lower court by appropriate pleading . . . or [it] is waived"].)

As one court explained, "A trial judge presiding over a case initiated by an incarcerated and self-represented plaintiff, particularly when there has been no appearance by any defendant, faces a significant challenge in balancing his or her obligations to facilitate the ability of the self-represented litigant to be fairly heard, on the one hand, and to refrain from assuming the role of advocate, on the other." (*Holloway v. Quetel* (2015) 242 Cal.App.4th 1425, 1434.) By raising the statute of limitations, the trial court was acting as an advocate, which it cannot do.

We conclude the trial court erred by raising the statute of limitations defense because only Defendant may raise that issue. Because we conclude the trial court erred by raising the statute of limitations, we do not address the secondary issue of whether the trial court erred by disregarding the tolling allegations in the FAC.

8

B.    DEFAULT PROVE-UP HEARING

Plaintiff asserts the trial court improperly required him to prove the material allegations of the FAC when the material allegations had already been "admitted by Defendant (Def.) by default."

"A defendant's failure to answer the complaint has the same effect as admitting the well-pleaded allegations of the complaint, and as to these admissions no further proof of liability is required.  [Citations.]  Thus, in a default situation . . . if the complaint properly states a cause of action, the only additional proof required for the judgment is that needed to establish the amount of damages."  (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 898.)  " 'The "well-pleaded allegations" of a complaint refer to " ' "all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' " ' "  (*Ibid.*)  If the well-pleaded allegations in a complaint fail to state a cause of action, then a default judgment cannot be entered.  (*Kim*, *supra*, 201 Cal.App.4th at p. 282; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829.)

"In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]  'Thus, " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "  [Citation.]  [¶]  This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." ' "  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

9

We examine whether Plaintiff sufficiently pled the material facts for his fraud causes of action such that liability was established by Defendant's default. Because this review is similar to reviewing a ruling on a demurrer, we apply the de novo standard of review. (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

" ' "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.)

"The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action." (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308.) However, there are exceptions to this rule. An opinion may be actionable "where it is 'expressed in a manner implying a factual basis which does not exist.' " (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 893 (*Jolley*).) An opinion may also be actionable as a misrepresentation when (1) it is false and (2) "it is made by a party who 'possess[es] superior knowledge.' " (*Id.* at p. 892.)

In his FAC, Plaintiff alleged, "[Defendant] did not rely, or base an SBS [(shaken baby syndrome)] diagnosis on the actual autopsy findings and diagnosis (i.e., 'one traumatic [blunt-force] episode' to account for all 4-28-01 neurological damage)." We will examine whether Plaintiff sufficiently alleged that Defendant's opinion implied a

10

non-existent factual basis. Plaintiff attached to the FAC a partial reporter's transcript from the preliminary hearing for Plaintiff's criminal case. Defendant testified at the preliminary hearing and explained that "the [victim's] most fatal injury and the injuries that were very acute . . . [were] subdural hematoma, which is bleeding into the covering layer . . . between the brain and the skull . . . and there was a lot of bleeding, extensive bleeding. And the most acute was mostly on the right. It was to the back of the head. . . . [¶] He had also extensive retinal hemorrhages . . . . They were very extensive." Defendant opined that the victim's injuries were caused by "abusive head trauma or what we commonly know as shaken baby syndrome." Defendant explained that such injuries could result if "a baby is shaken vigorously. It's an acceleration-deceleration, so it's a forward and back movement (indicating) of the head that causes the brain to go back and forth and causes a lot of intercranial bleeding, a lot of bleeding in the head, causes bleeding in the eyes."

Also attached to the FAC is a partial reporter's transcript that is unidentified but appears to be from Defendant's criminal trial. The partial transcript includes some of the testimony of Dr. Trenkle, who is a deputy medical examiner for the San Bernardino County Coroner's Office. Trenkle conducted the autopsy on the victim. Trenkle testified that the victim suffered subdural hematomas. Trenkle agreed with a question reflecting there was "extensive retinal hemorrhaging . . . in this case." Trenkle testified that in shaken baby syndrome "the baby's head is moving back and forth, and it can—it can lead to subdural hemorrhage." Thus, Trenkle agreed the facts that underlie Defendant's opinion exist, i.e., the victim suffered subdural hematomas and retinal

11

hemorrhages, and that shaken baby syndrome involves a forward and backward movement of a baby's head, which can cause bleeding. Accordingly, Plaintiff's FAC fails to sufficiently allege that Defendant's opinion, as presented at the preliminary hearing, implied a factual basis that does not exist.

In regard to Defendant's trial testimony, Plaintiff asserts that Defendant incorrectly relied upon an intraparenchymal hemorrhage to support her shaken baby syndrome diagnosis. Plaintiff cites to a consulting physician report that defendant wrote. In the report, Defendant wrote, "There is air and hemorrhage along the shunt tract and new intraparenchymal hemorrhage in the left frontal lobe." At the end of the report, Defendant opined that the victim's death was caused by an intentionally inflicted injury. However, in the report, Defendant does not explain why she believes the victim's injuries were intentionally inflicted. Thus, it is unclear why Plaintiff believes the intraparenchymal hemorrhage is a basis for Defendant's opinion.

Nevertheless, for the sake of addressing Plaintiff's concern, we will assume the intraparenchymal hemorrhage was the basis for Defendant's opinion. Plaintiff asserts the autopsy did not record a new intraparenchymal hemorrhage, which we presume is Plaintiff's way of asserting that the intraparenchymal hemorrhage did not exist. Plaintiff's assertion that the intraparenchymal hemorrhage did not exist is contradicted by a radiology report that reads, "There is a left frontal intraparenchymal hemorrhage just lateral to the frontal horn of the left ventricle, this appears new." The radiology report was written by Kevin Kroeger, M.D. and agreed with by Nathaniel Wycliffe,

12

M.D. Thus, it appears that Defendant's opinion concerning the intraparenchymal hemorrhage did not imply a factual basis that does not exist.

Next, Plaintiff asserts Defendant lied about the victim having suffered a fracture of his right femur. The autopsy report's "diagnosis" section provides, in part, "Inflicted injury, right femur, remote," and beneath that, as a subpoint, it reads, "Subperiosteal new bone formation." Thus, in the autopsy report, Trenkle wrote that the victim had previously suffered an injury to his right femur. Accordingly, Plaintiff has not sufficiently alleged that Defendant implied a fact that did not exist.

In sum, there is corroboration, in the materials Plaintiff attached to the FAC, for the facts that Defendant relied upon in reaching her opinion. Thus, Plaintiff did not sufficiently allege that Defendant implied a factual basis that does not exist when giving her opinion.

In regard to Defendant's opinion being false, Plaintiff alleged that Defendant made an "incompetent neurological diagnosis" by concluding that shaken baby syndrome caused the victim's fatal brain injury. Defendant believed a blunt force impact would have fractured the victim's skull but that shaking likely caused the victim's brain injury. Trenkle believed the victim's brain injury could have resulted from a single blunt force impact that was so severe it fractured the victim's skull and injured the victim's brain. Nevertheless, Trenkle testified that it was possible the victim was shaken in addition to the blunt force impact. Because Trenkle agreed the victim may have been shaken, Defendant's belief that the victim may have been shaken was not necessarily false or wrong. Because the allegations do not show that Defendant's

13

opinion was false, the fraud/misrepresentation cause of action does not fall within the exception for a false opinion that is expressed by a person with superior knowledge. (*Jolley*, *supra*, 213 Cal.App.4th at p. 892.)

Plaintiff concluded in the FAC that Defendant's opinion was fraudulent because it contradicted the autopsy findings. However, as explained *ante*, legal conclusions are not sufficient for a default judgment. When looking at the well-pleaded allegations of a complaint, we examine the material facts that are alleged. (*Kim*, *supra*, 201 Cal.App.4th at p. 282.) The exhibits attached to the FAC reflect that Trenkle, who conducted the autopsy, testified that it was possible the victim was shaken. In other words, the material facts set forth in the FAC reflect Plaintiff is suing Defendant for expressing her opinion, and Plaintiff failed to allege facts reflecting that Defendant's opinion is false or based on non-existent facts.

For the sake of thoroughness, we look at Plaintiff's allegations related to the element of justifiable reliance. "In a fraud case, justifiable reliance is the same as causation." (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 855, fn. 2.) In the trial transcript attached to the FAC, Trenkle opined that the victim's injuries were caused by an intentional blunt force impact. Trenkle explained that falling onto a carpeted step from a height of 18 to 24 inches would not have caused the victim's injuries. Rather, for the victim's skull to fracture due to a fall, the victim would have had to fall from "a height greater than 10 to 20 feet." Trenkle explained that fatal injuries from a fall occur, for example, when a person falls out a window from the third floor of a building or higher.

14

The jury could have relied upon Trenkle's testimony to convict Plaintiff in the criminal trial. Trenkle opined that the victim's injuries were likely caused by one severe and intentional blunt force impact. Therefore, if Defendant had never testified about her opinion that the victim was shaken, then the jury still would have had evidence by which it could have found the victim's injuries were intentionally inflicted. Because it is not clear from Plaintiff's allegations if the jury relied upon Defendant's opinion, as opposed to Trenkle's opinion, when convicting Plaintiff, causation/justifiable reliance was not well pled.

In sum, in regard to fraud/misrepresentation, the facts alleged in the FAC and its attached exhibits indicate that Defendant's opinion regarding the victim being shaken (1) relied upon existing facts; (2) was not false because Trenkle agreed it was possible that the victim was shaken; and (3) may not have been the basis for the jury's guilty verdict because the jury could have relied on Trenkle's opinion in finding Plaintiff guilty. Accordingly, we conclude Plaintiff did not adequately plead fraud/misrepresentation.

In regard to fraud/concealment, Plaintiff alleged, "Post-autopsy, [Defendant] intentionally concealed autopsy material facts, and incompetence, to intentionally (represent pre-autopsy x-ray impressions, or) misrepresent as 'found at the autopsy' [citation], an old 'thin cortical fracture in the length of the [right] femur.' Diagnosing the cause as 'abuse' [citation]—or 'on-going abuse' as a substantiating 'factor' D.A.I./S.B.S. [(diffuse axial injury/shaken baby syndrome)] is cause of neurological damage (and death) on 4-28-01."

15

In the foregoing allegation, Plaintiff alleges that Defendant concealed facts. However, Plaintiff fails to allege how the facts were concealed; when they were concealed, other than post-autopsy; from whom they were concealed; and where the concealing occurred. To the extent Plaintiff is asserting that Defendant concealed facts at the preliminary hearing, it is unclear in what manner she did that because the transcript reflects that Defendant answered questions on cross-examination. Thus, there is no indication that Defendant concealed information during the preliminary hearing by refusing to answer questions.

When pleading a fraud cause of action, a plaintiff must allege facts indicating " 'how, when, where, to whom, and by what means' " the fraud occurred. (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645.) In the FAC it is unclear how, when, where, to whom, and by what means Defendant allegedly concealed information. Accordingly, we conclude Plaintiff failed to plead sufficient facts for a fraud/concealment cause of action.

The intentional infliction of emotional distress cause of action was dependent on the fraud causes of action in that Plaintiff alleged the fraud resulted in his emotional distress. One of the elements of an intentional infliction of emotional distress cause of action is "extreme and outrageous conduct by the defendant." (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1007.) "Ordinarily, a medical diagnosis and treatment advice will not be considered outrageous unless they are false and given in bad faith." (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 534.) Defendant opined that the victim was shaken. Trenkle agreed that the victim may have

16

been shaken. Given that Trenkle agreed the victim may have been shaken, Plaintiff did not sufficiently allege that Defendant's opinion was false and given in bad faith. The conclusions pled by Plaintiff, e.g., the conclusion that Defendant's opinion was false, are not sufficient for a default judgment. Plaintiff has to plead facts. The FAC fails to set forth facts reflecting Defendant's opinion is false, particularly given the fact that Trenkle testified the victim may have been shaken.

In sum, Plaintiff did not sufficiently allege his fraud and intentional infliction of emotional distress causes of action. Because the causes of action were inadequately pled, the trial court could not enter a default judgment. (*Kim*, *supra*, 201 Cal.App.4th at p. 282.) Therefore, we conclude the trial court did not err by denying Plaintiff's request for a default judgment. Moreover, because the causes of action were inadequately pled, the trial court's error related to the statute of limitations is harmless in that the request for a default judgment still would have been denied absent the statute of limitations error. (See Code Civ. Proc., § 475 [error is harmless unless a "different result would have been probable"].)

C.     DISMISSAL

Plaintiff contends the default prove-up hearing was effectively a hearing on an OSC re: dismissal without prior notice.

" ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

17

them an opportunity to present their objections." ' " (*Edward W. v. Lamkins* (2002) 99 Cal.App.4th 516, 529.)

When Defendant's default was entered, Plaintiff had 45 days to obtain a default judgment or to obtain an extension of that deadline. (Cal. Rules of Court, rule 3.110(h).) When the trial court denied Plaintiff's request for a default judgment, it could have set an order to show cause why the sanction of dismissal should not be imposed for Plaintiff's failure to obtain entry of judgment. (Cal. Rules of Court, rule 3.110(h).) Generally, sanctions cannot be imposed without providing notice and an opportunity to be heard. (*Reid v. Balter* (1993) 14 Cal.App.4th 1186, 1193.)

In the instant case, the trial court dismissed Plaintiff's case at the default prove-up hearing. There is no indication in the record that Plaintiff was given notice that the case might be dismissed at the default prove-up hearing. When the trial court set the default prove-up hearing it indicated the hearing would be focused on Plaintiff's default judgment packet. Given the lack of notice that the trial court would be considering dismissal of Plaintiff's case, we conclude the judgment of dismissal is void due to a lack of notice and must be reversed. (*Lovato v. Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 554; *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 210; *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286.)

## DISPOSITION

The order denying Plaintiff's request for entry of a default judgment is affirmed.

The judgment dismissing the case is reversed.  Plaintiff to bear his own costs on appeal.

(Cal. Rules of Court, rule 8.278(a)(3).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.